## 30015. BARRETT et al. v. HAMBY.

HALL, Justice.

In this appeal we affirm the judgment of the Superior Court of Cobb County which ruled that the county's zoning of the Hamby property constituted an unconstitutional taking of that property without just compensation.

The zoning giving rise to this dispute is designated R-20 under the Cobb County Zoning Ordinance. R-20 property may be used for little else than free standing single family homes on half-acre lots. The property measures some 26 1/2 acres and is owned by the estate of Mack C. Hamby. The estate's executor applied for rezoning to classification PSC—planned shopping center. After notice, a public hearing was held before the Cobb County Board of Commissioners at which proponents and opponents of the rezoning appeared. The application was subsequently denied. The executor then filed a complaint in equity in Cobb Superior Court alleging that R-20 classification deprived him of his property under Art. I, Sec. I, Par. III of the Georgia Constitution of 1945 (Code Ann. § 2-103) and the due process clause of the Fourteenth Amendment to the United States Constitution. Following an evidentiary hearing, the court agreed with the executor that the R-20 designation was unconstitutional as to the Hamby property, and ordered the board to reclassify the property consistent with the owner's constitutional rights. The board brings this appeal.

The uncontested evidence before the superior court was that the Hamby property was bordered on the north by commercially zoned land; there was no natural boundary dividing the Hamby property from the commercial land; there was a half-acre cemetery in roughly the central portion of the property; the property was located at the intersection of Sandy Plains Road and East Piedmont Road; diagonally across the intersection from the property was the Sprayberry High School enrolling some 2,290 students; prior to the hearing before the board, the Cobb County Planning Commission had recommended that the classification be changed from R-20 to PSC.

In favor of the requested rezoning, the following evidence was presented by the executor. He testified that he had received numerous offers from prospective purchasers who desired the land for commercial purposes and none from residential developers. Carl J. Tschappat, president of an economic analysis and land planning firm, testified that he had analyzed this land for a prospective commercial purchaser; that the traffic count through the adjoining intersection was some 18,000 vehicles daily; that the property as residential land was not competitive with nearby residential developments because of the heavy traffic and lack of trees; that traffic maneuvers into and out of numerous residential driveways would be dangerous, whereas a commercial development could consolidate its traffic routes; that residential traffic would increase the traffic flow at the same time the school generated its maximum traffic flow, whereas commercial use with businesses which opened later and closed later than the school would spread the traffic load; that these same considerations argued against multi-family or apartment usage for the property; that the property's low visibility from long distance driving routes made it undesirable for an office park; that the property would have a good prognosis as a shopping center; that the highest and best use of the land was commercial; that nearby wooded subdivision lots were priced at approximately $5,000 to $8,000 and that this land would not be able to command a comparable price in a similar use because of its residential disadvantages. Mr. Charles Wilson, a real estate broker, then testified that he would not attempt to develop this property for residential use because of the cemetery, the traffic, the nearness of the school and the absence of trees; that its best use was commercial; and that "there are hundreds of [residential] lots that are fully developed within a mile of this area that are much, much more desirable than this could ever be made"; that he would not pay $2,000 per lot for this land for residences, whereas for commercial use this tract was more desirable than one estimated at $35,000 an acre. Mr. Leak, the Cobb County Zoning Administrator, testified that he recommended to the Planning Commission that they approve the rezoning application; that he concluded

the best use was as a shopping center; and that there were no public utility problems envisioned for commercial development.

The board then presented its evidence, which consisted of a transcript of the earlier hearing before the board, and the live testimony of Mr. Louis Smith, a Cobb County planner. Mr. Smith testified that the future land use map for Cobb County, which constitutes a policy guide but has no legal force, was before the board at the hearing, and on that map the planned use for the instant property is residential. The supporting reasoning was, "We felt at the time because of the undeveloped portion of the commercial zoning in the immediate vicinity, . . . that was adequate to meet the demand for the future. So we left the other portion single family residential, which is the present zoning category." He further testified that he felt that schools and commercial developments were not compatible; however, he made plain that Sprayberry High was not concerned with children walking to school but was concerned with traffic generated by students driving their own cars. This witness further conceded that the Hamby property had features which would make it difficult to market as residential land.

The transcript of the hearing before the board, introduced in the superior court proceeding, indicated that some 27 surrounding landowners signed a petition approving the proposed rezoning while a few objected to it. Two persons spoke against the rezoning on grounds that commercial development would increase congestion and detract from the residential atmosphere of the community. One Sprayberry student spoke against it on grounds that a shopping center would be a "distraction" to the students. One of the adult opponents said "We have 1,093 signatures against this proposal," but we note that the record does not indicate who these 1,093 persons are or what right they have to have their opinions considered in this matter. It appeared that the Sprayberry School officials had voiced a concern that commercial development would further congest the arteries by which the faculty and students drove their cars to school.

At the conclusion of the evidence the superior court ruled with the executor and voided the R-20 zoning.

The board's argument here on appeal is that zoning is a legislative matter and judicial review is not appropriate unless the zoning decision, as in *Tuggle v. Manning,* 224 Ga. 29 (159 SE2d 703), approaches total deprivation of use of the land. The board additionally argues that the owner's economic considerations should not control, and that the action of the board here should be upheld because motivated by concern for the community's safety, morality and welfare.

We agree that zoning is a quasi-legislative matter (*Olley Valley Estates v. Fussell,* 232 Ga. 779, 781 (208 SE2d 801)). However, zoning is subject to the constitutional prohibition against taking private property without just compensation. *Tuggle v. Manning,* supra; *Glynn County Comrs. v. Cato,* 183 Ga. 111 (187 SE 636); *City of Thomson v. Davis,* 92 Ga. App. 216, 220 (88 SE2d 300). For example, a sister state has ruled on similar facts that a zoning ordinance restricting an area to residential use is void as to property located in the area but so situated in relation to a commercial zone as to be peculiarly unattractive, if at all salable, for residential uses. Krom v. City of Elmhurst, 8 Ill. 2d 104 (133 NE2d 1). As the individual's right to the unfettered use of his property confronts the police power under which zoning is done, the balance the law strikes is that a zoning classification may only be justified if it bears a substantial[1] relation to the public health, safety, morality or general welfare. Lacking such justification, the zoning may be set aside as arbitrary or unreasonable. Nectow v. Cambridge, 277 U. S. 183, 188 (1928); *City of Thomson v. Davis,* supra, p. 221.

---

[1]Though following its pronouncement in Nectow of a "substantial" relation test the Supreme Court has not further construed this term, it appears that "substantial" is more or less synonymous with "reasonable" (because the reasonableness of zoning on all the facts is the ultimate enquiry), and is clearly more than "any" evidence. See Nectow, supra, p. 187; 1 Rathkopf, The Law of Zoning and Planning, Ch. 5, p. 5-1 (1974); 8 McQuillin, Municipal Corporations, §§ 25.42—25.44 (3d Ed. 1965); 1 Anderson, American Law of Zoning § 2.22 (1968); 3 Anderson, § 21.17.

As these critical interests are balanced, if the zoning regulation results in relatively little gain or benefit to the public while inflicting serious injury or loss on the owner, such regulation is confiscatory and void. City of Jackson v. Bridges, 243 Miss. 646 (139 S2d 660); Weitling v. DuPage County, 26 Ill. 2d 196 (186 NE2d 291). Moreover, we specifically rule that for such unlawful confiscation to occur, requiring that the zoning be voided, it is not necessary that the property be totally useless for the purposes classified. Accord, Weitling v. DuPage County, supra. It suffices to void it that the damage to the owner is significant and is not justified by the benefit to the public. See generally 8 McQuillin, Municipal Corporations §§ 25.42—25.45 (1965); 1 Rathkopf, The Law of Zoning & Planning, Chs. 5 & 6 (1974).

The executor has amply proved loss by the R-20 designation and the refusal to rezone. As we search the record here for a countervailing benefit to the public, we find none of substance. Plainly, a commercial development of this land can pose absolutely no threat to the community's "safety" or "morality." As we consider its "welfare," we find merely the board's policy determination that the county already has enough commercially zoned property. Such an attempted justification, though it is relevant (see Code Ann. § 69-802), cannot alone suffice; it completely fails to scrutinize the merits of the land in question and the impact of the decision upon the landowner's property rights. This alleged community welfare interest is too vague and thus weighs too lightly in the balance to offset the owner's substantial injury by the R-20 designation. Neither is the asserted interest of the school officials in minimizing traffic an adequate justification on these facts for depriving this property of a great portion of its value.

In determining whether the zoning is justified, we must reject the board's argument that its construction, if done in good faith, is conclusive on the issue of what will serve the community's interest. See *City of Columbus v. Stubbs,* 223 Ga. 765, 767 (158 SE2d 392). Instead, we require that the board justify its determination, and sufficient justification here is missing. See *Morrow v. City of Atlanta,* 162 Ga. 228 (133 SE

345); *Smith v. City of Atlanta,* 161 Ga. 769 (132 SE 66).

Consequently, the superior court did not err in voiding the zoning and ordering the board to reconsider the matter and zone the property appropriately. The superior court did not arrogate to itself the power to give this property any particular zoning classification. It merely ruled correctly that the R-20 classification invaded the owner's constitutional rights.

*Judgment affirmed. All the Justices concur, except Jordan and Ingram, JJ., who dissent.*

SUBMITTED JUNE 4, 1975 — DECIDED SEPTEMBER 16, 1975 — REHEARING DENIED SEPTEMBER 30, 1975.

*Ben F. Smith,* for appellants.
*Jean E. Johnson, Jr.,* for appellee.

GUNTER, Justice, concurring.

I join the court's opinion and judgment in this case, but I deem it appropriate to state the reasons for my concurrence.

This case presents, as I view the primary issue, a very difficult problem for the judiciary: the application of the constitutional concept of "substantive due process of law." Substantive due process relates to a determination of whether the government has or has not exceeded its power in regulating life, liberty, or property. Procedural due process relates to the procedural requirements that must be followed by the government in allowing it to regulate life, liberty, or property, in those instances where it has "the power" to do so.

Our Georgia Constitution provides: "No person shall be deprived of life, liberty, or property, except by due process of law." Code Ann. § 2-103. The equivalent of this is also contained in the Fifth and Fourteenth Amendments to the Federal Constitution. Our Georgia Constitution also provides: "Legislative acts in violation of this Constitution, or the Constitution of the United States, are void, and the Judiciary shall so declare them." Code Ann. § 2-402.

With respect to zoning, the Georgia Constitution

provides: "The General Assembly of the State shall have authority to grant the governing authorities of the municipalities and counties authority to pass zoning and planning laws whereby such cities or counties may be zoned or districted for various uses and other or different uses prohibited therein, and regulating the use for which said zones or districts may be set apart, and regulating the plans for development and improvements on real estate therein." Code Ann. § 2-1923. The statutory grant of power by the General Assembly to the municipalities and counties to enact zoning regulations is contained in Code Ann. § 69-1207. A portion of this statutory grant of power reads as follows: "Such regulations shall be made with reasonable consideration, among other things, of the character of a district and its peculiar suitability for particular uses, and with a view to promoting desirable living conditions and the sustained stability of neighborhoods, protecting property against blight and depreciation, securing economy in governmental expenditures, conserving the value of buildings and encouraging the most appropriate use of land and other buildings and structures throughout such municipality or county or both."

Under our Georgia Constitution and statutes it is my view that zoning regulations enacted by local governing bodies are valid unless they are arbitrary and unreasonable to the extent of substantially depriving a person of his liberty and property. An arbitrary and unreasonable zoning regulation, as so measured, is an excessive exercise of legitimate governmental power, and it is therefore violative of what I call "substantive due process of law."

The problem with the substantive due process concept is that the decision makers, those who decide whether a zoning regulation is arbitrary and unreasonable, are mere men whose subjectivity is seldom exceeded by their ability to be objective. This is true of local governing officials, legislators, and judges, both trial and appellate.

Nevertheless, it is clear to me that in our form of government the final decision-making function in the area of "substantive due process of law" has been reposed

in the judiciary. And I see it as a duty of the judiciary under the Georgia Constitution to make the determination of whether a unit of government has exceeded its power so as to substantially deprive a citizen of his liberty and property. I realize that a judge or group of judges will not attain objectivity, but perhaps the framers of our government believed that just a little bit more objectivity could be attained in the judicial system rather than in the arena of conflict and volatile emotions.

The application of the "substantive due process" concept by the judiciary has been a subject lengthily discussed and debated throughout this century. The late Mr. Justice Black was the most vocal opponent of the concept in the Supreme Court of the United States. See his dissenting opinion in Adamson v. California, 332 U. S. 46, 68-123, and his concurring opinion in Rochin v. California, 342 U. S. 165, 174-177. However, he was never able to muster a majority for his position, and recent decisions indicate that substantive due process is still a viable concept. See Stone, Introduction: Due Progress of Due Process, 25 Hastings Law Journal 785, and Vieira, Roe and Doe: Substantive Due Process and the Right of Abortion, 25 Hastings Law Journal 867.

As I read this record, the zoning ordinance applied to the land in this case is arbitrary and unreasonable to the extent of substantially depriving a citizen of his liberty and property; the application of the ordinance to the property in this case amounts to an exercise of governmental power in an excessive manner; and the application of the ordinance to the property in this case is violative of the Due Process Clause of the Georgia Constitution.

INGRAM, Justice, dissenting.

The majority opinion is a sharp departure from the view taken historically by this court in reviewing zoning cases. I believe this decision invades the constitutional province of the county governing (zoning) authority. What the court in effect is holding is that it will now review any local zoning decision based on conflicting evidence to determine whether "it bears a substantial

relation to the public health, safety, morality or general welfare." This is an awesome task,—far beyond the traditional court review in Georgia, and far beyond even the majority opinion of the 4 to 3 decision of this court in *Tuggle v. Manning,* 224 Ga. 29 (159 SE2d 703).

The implication of the present decision is that every local zoning authority in Georgia (potentially every county and municipality in the state) must now justify to the court every disputed zoning decision it makes. The great danger inherent in this ruling is that it will necessarily substitute this court's judgment for the local governing authority's judgment when the evidence is in conflict, as it is in the present case.

Since this decision moves the final exercise of zoning power out of its constitutional resting place into the hands of the judiciary, I must dissent to it. The courts will not be able to handle the floodtide of litigation which could well result from this far-reaching decision. My view of the court's role in zoning matters is summarized in *Olley Valley Estates v. Fussell,* 232 Ga. 779, 786 (208 SE2d 801). I adhere to the understanding expressed there of the Georgia cases which I think are sagacious and should continue to be followed by this court.

I am authorized to state that Justice Jordan joins in this dissent.