*Fulcher,* for appellants.
*Stephen E. Curry,* for appellee.

## 37234. DeKALB COUNTY v. BLALOCK MACHINERY & EQUIPMENT COMPANY, INC.

PER CURIAM.

Appellee Blalock sued DeKalb County in DeKalb Superior Court, alleging that the county's comprehensive land use plan, pursuant to which the appellee's 182-acre tract of undeveloped DeKalb County real estate was zoned R-150 (one-acre residential lots), is unconstitutional in that it amounts to a taking of the appellee's property without compensation or due process, and that, consequently, the DeKalb County Board of Commissioners' denial of its written request to rezone said real estate to R-100 (15,000-square-foot residential lots) was similarly unconstitutional.

The trial judge decreed the R-150 zoning ordinance to be arbitrary and unreasonable as applied to the appellee's property, and declared it to be null and void as to said property. He further enjoined the appellant county from enforcing this classification against this property, and ordered the county to review "suitable zoning" for the property in a "constitutional manner." The county appeals. We reverse.

1. The appellee's constitutional attack on the R-150 zoning classification before the Board of Commissioners, was sufficient, hence the attack was not made for the first time in the superior court, which is prohibited by *DeKalb County v. Post Properties,* 245 Ga. 214, 217 (263 SE2d 905) (1980) and cits. See generally, *Post Properties,* supra; *Grantham v. State,* 244 Ga. 775 (262 SE2d 777) (1979); *Lambert v. City of Atlanta,* 242 Ga. 645 (2) (250 SE2d 456) (1978); *Christiansen v. Robertson,* 237 Ga. 711 (229 SE2d 472) (1976); *Barrett v. Hamby,* 235 Ga. 262 (219 SE2d 399) (1975).

2. "A zoning ordinance is presumed to be valid and the burden is on the property owner attacking the zoning classification to overcome this presumption by clear and convincing evidence. *Guhl v. Holcomb Bridge Rd. Corp.,* 238 Ga. 322, 323 (232 SE2d 830) (1977). In *Guhl* we held that *one* of the factors to be considered is the extent to which the value of the owner's property is diminished by the zoning classification. In *Guhl* the property could not reasonably and economically be used for the purpose for which it was zoned (238 Ga. at 324, finding No. 7).

"In the birthright case of *Barrett v. Hamby,* 235 Ga. 262, 266 (219 SE2d 399) (1975), we said '. . . if the zoning regulation results in relatively little gain or benefit to the public while inflicting serious injury or loss on the owner, such regulation is confiscatory and void.' While it is not necessary for the property to be totally useless for the purposes zoned, it is necessary that the damage to the owner be significant. *Barrett v. Hamby,* supra, 235 Ga. at 266. In *Barrett,* the evidence showed that the property was virtually unusable for residential purposes for which it was zoned, that its value for residential purposes was under $53,000 (under $2,000 per acre) whereas its value for commercial development was about $927,500 (about $35,000 per acre).

"As *Guhl,* supra, points out, the difference in property values between various zoning classifications is not the only factor to be considered, but under *Barrett v. Hamby,* the property owner is required to show serious and significant injury to himself in order to satisfy the burden of proof which is upon him. 'It is not sufficient to show that a more profitable use could be made of the property.' *Avera v. City of Brunswick,* 242 Ga. 73, 75 (247 SE2d 868) (1978)." *Pennington v. Rockdale County,* 244 Ga. 743 (262 SE2d 59) (1979).

At the outset, it is noted that the usual zoning case involves a requested change from one general type of land use to another general type; whereas here, the change sought is within the same general use classification, i.e., residential, and merely affects the density of the use. The county presented evidence that its comprehensive land use plan recommends "low density residential use" for the subject property, and that both R-100 and R-150 are "low density residential uses," which, from a planning standpoint, would be compatible with the comprehensive plan. Therefore, the comprehensive plan is a neutral factor in this suit, and does not support a finding that the Board acted arbitrarily and capriciously in deciding not to change the existing zoning from one low density use to another.

The trial court's order recites that the "[p]laintiff has had the property on the market for sale for at least seven years and has not received any offers for purchase of the property, except for offers made on the condition that the property be rezoned for industrial purposes or for higher density residential purposes." However, the evidence fails to show a genuine effort to sell the property as zoned. The marketing consisted of the placing of a "for sale" sign on the property and telling several realtor friends that the land was for sale. There was no evidence that the property was ever listed or that a brokerage agreement was ever signed. A developer testified that he

had considered purchasing the property as zoned, but that the $9,000-per-acre asking price was "unrealistic" for R-150 land, and that the appellee was not really serious about selling the property. There was testimony from an appraiser that the property's value zoned R-150 is $5,886 per acre, and undisputed evidence showed that lots one acre and larger are selling in two nearby subdivisions.

The appellee argues that it is unable to develop the property under its existing zoning because the following factors preclude R-150 development.

(a) *Market considerations.* The appellee did not even attempt to show at trial that the property could not be developed, but only that the present zoning would not bring a financial return that would be "acceptable." Its own witness acknowledged that the property could be developed if the selling price were lowered to $5,500 per acre. Under the above cited cases, the appellee did not carry its burden by showing that a more profitable use could be made of the property if zoned R-100.

(b) *Terrain.* The finding, that the property's terrain precludes R-150 development as to the entire 182-acre tract, is not supported by the evidence. There was testimony that property with poor terrain is more economically developed with large lots, because costly cutting and filling of the land is avoided. Again, the appellee's own witness testified that the topography of the subject property is not much different from other property developed in the area.

(c) *Floodplain.* Whether the floodplain constitutes 15-20% of the total acreage, as the appellee contends, or only 10%, as its witness testified, this is a neutral factor similarly affecting both R-150 and R-100 development, since, under either zoning classification, the floodplain must remain undeveloped open space.

(d) *Septic tanks.* Contrary to the appellee's speculation that the floodplain might have a detrimental effect upon development of the property with septic tanks, the county's unrebutted evidence showed that the floodplain would have no effect on the use of septic tanks, by the use of which the developer would save approximately $1,300 per acre. There was no showing that sewer lines advance the public's health, welfare and safety any more than septic tanks, so as to justify an interference with the local government's legislative choice between these two sewerage systems.

(e) *Surrounding land uses.* All of the property immediately north of the subject property is zoned R-150 except for a small segment which, though zoned R-100, was developed with average lot sizes much larger than the R-100 minimum, and most lots larger than the R-150 minimum size. Therefore, the finding that the R-150 zoning is incompatible with the R-100 zoning, was unauthorized. The

property to the east is undeveloped, unimproved land zoned R-150, the same as the subject property. The Stone Mountain Freeway lies immediately south of the subject property and an industrial park lies to the west of the property. Any negative impact that the highway or industrial park might have upon the property would be reduced by an undisturbed, natural buffer, which would be 100 or 150 feet wide under either R-100 or R-150 zoning.

Since the size of the land in question is so large (182 acres), with different factors affecting the various portions of it, however, we hold that the trial court's holding, that the R-150 classification is unconstitutional as to the entire tract, is overbroad. Accordingly, we reverse that judgment.

*Judgment reversed. All the Justices concur, except Marshall, J., who dissents from Division 2 and the judgment.*

DECIDED MAY 26, 1981 —
REHEARING DENIED JUNE 16, 1981.

*Robert H. Walling, Gail C. Flake,* for appellant.
*Schreeder, Wheeler & Flint, David H. Flint, Warren O. Wheeler, John A. Christy,* for appellee.

MARSHALL, Justice, dissenting.

Although the majority relies upon cases holding that the applicant for rezoning must show more than merely that he could make a more *profitable* use of the property if rezoned, the plaintiff here presented evidence that he had tried for seven years to sell the property as presently zoned, and was unable to sell it *at all,* for a number of reasons. The trial judge, as the trier of the facts, has weighed all of the evidence and concludes that the plaintiff had made a genuine effort to sell the property, that he was unable to because of its zoning, and hence that the zoning was unconstitutional. These findings are all supported by some competent evidence, hence should be binding on this court.

The majority, on the other hand, after noting the conflicting evidence, now chooses to weigh the county's evidence more heavily and reverse. I think it is very significant that the rezoning sought by the plaintiff here was supported by the county's Planning and Zoning Department as well as its Planning Commission (both *non*-political bodies), and opposed only by the *political* Board of Commissioners (whose ruling the trial court overturned).

Unless this court is to become a super zoning board, we must let the trial courts resolve the issues of fact, and not get into the business

of weighing the evidence there adduced. Furthermore, the issue of the size of the tract of land involved is not a factor in this case, inasmuch as the trial court's order does not require any *specific* classification of zoning — for the whole tract or any portions thereof — but merely holds that the R-150 zoning of the entire tract is unconstitutional, thus giving the Board of Commissioners leeway to rezone the component parts of the whole in accordance with the evidence, even permitting modifications to fixed zoning, as was done in an adjacent subdivision and which the plaintiff here offered to accept.

I would affirm the trial court's judgment, and respectfully dissent.