S97A1175. CITY OF McDONOUGH et al. v. TUSK PARTNERS.
(492 SE2d 206)

HUNSTEIN, Justice.

Tusk Partners, a Georgia general partnership, filed an applica-

---

tion with the City of McDonough to rezone 19.28 acres of land it contends is in the City of McDonough. Tusk first sought to have the land zoned from R-200 (single family residential) to C-3 (highway commercial); the city planning staff and an expert land use planner recommended the application be denied, but that the property be rezoned to R-100 (still residential but with smaller lot sizes thereby allowing higher density development than R-200). Tusk then filed a second application, seeking a divided rezoning with 6.29 acres as an O-I zone (office institutional) and 12.99 acres as a C-3 zone (highway commercial). After several public hearings, the City denied the application but voted to rezone the property to R-100, which would allow the property to be developed as a subdivision. Tusk brought suit attacking the constitutionality of the R-100 zoning. The property is located at the corner of a small "collector" road and a major thoroughfare, Jonesboro Road, which has been proposed to be widened to four lanes. Across the street from the property is vacant land designated for commercial development. On the east side of that parcel are two acres of land zoned (pursuant to a court order) as C-1 with a convenience store and gas station. Across the road from the store is land zoned as O-I. Land is zoned as commercial 4,000 feet west of the property. Property 2,000 feet east of the property was also rezoned commercial pursuant to court order.

The evidence heard by the trial court included: Tusk's planning expert testified that the property would not be desirable for residential purposes because of the traffic on Jonesboro Road and testified that residential properties adjacent to Tusk's property would not be adversely affected by zoning Tusk's property commercial in that buffers would adequately shield the adjacent residential properties from customer traffic, tractor truck deliveries, and the light from the all-night security beacons that would be installed throughout the several planned parking lots. The planning expert noted there was a nearby residential development on Jonesboro Road with a buffer zone between the road and the homes. Tusk's property has 983 feet of frontage on Jonesboro Road and is centrally located between the center of the City of McDonough and Interstate 75, with these two desirable destinations less than two miles away in either direction. The planning expert testified there would be "enormous pressure just to strip zone this entire road"; stressed that many of the other Jonesboro Road properties surrounding Tusk's are already zoned commercial (the trial court noted most had been zoned commercial by court order); and testified that changing the zoning on Tusk's property from residential to commercial would "relieve pressure" on other properties along Jonesboro Road to become commercial strip shopping areas. Tusk's planning expert testified that it was "very important" that Jonesboro Road not become "one long strip of commercial

all along the road" and that avoiding this result is "an important public objective" which the City's plan promotes by concentrating commercial activity in "commercial nodes" at appropriate intersections; the category of commercial activity authorized at intersections between major and minor arterial roads includes convenience stores and gas stations. According to the road classifications introduced in evidence, Tusk's property is located at the intersection of Jonesboro Road, a major arterial road, and Kelly Road, a collector road (smaller than a minor arterial); the next nearest road, Dailey Mill Road, is a minor arterial road and a convenience store-gas station is located at that intersection. Tusk's amended site plans reflect 130,000 square feet in construction and 476 parking spaces along with a two-acre retention area to hold the rainwater formally absorbed by the property's trees and unpaved soil.[1] Tusk's planning expert identified Jonesboro Road-Dailey Mill Road intersection as an "emerging" commercial node. Tusk's value expert testified that the property was worth only $86,760 as residential property, stating that per-acre value of the land would be half that of other residential property in the area due to the growing traffic on Jonesboro Road, the location diagonally across from the property of a popular convenience store, and the "growing knowledge" that Jonesboro Road is a "commercial opportunity corridor." The owner of the residence across Kelly Road from Tusk's property testified that he had lived in his home for 28 years but was selling it because the community had changed and it was no longer desirable for residential property. The broker who handled the sale of this neighboring property testified that he has listed six residential homes on Jonesboro Road that "have the potential for commercial" development.

Evidence on behalf of the City included testimony by the City's planning expert that the property was in the midst of a developing residential area; that a domino effect would result if the property was zoned commercial; that traffic would increase; and that plenty of commercially zoned property already existed in the area. There was also testimony the property is worth $250,000 as zoned; that Tusk would earn a 30 percent gross profit selling it at this amount; and that Tusk has not attempted to market, use, or sell the property.

The trial court ruled that the current R-100 zoning was significantly detrimental to Tusk and was unsubstantially related to the public health, safety, morals, and welfare. Based on prior precedent, we will affirm the ruling of a trial court on the constitutionality of a zoning ordinance unless that ruling is "clearly erroneous." Where a

---

[1] The original site plan reflected 155,000 square feet of commercial space plus 30,000 square feet of out-parcel buildings and 804 parking spaces, with no retention pond.

property owner adduces evidence that establishes a down turn in viability of a property under its current zoning and a decrease in land value if the property remains under its current zoning classification, a trial court does not clearly err by concluding the property owner has carried its burden of proving a significant detriment. *DeKalb County v. Albritton Properties*, 256 Ga. 103, 108 (1) (a) (344 SE2d 653) (1986); *Barrett v. Hamby*, 235 Ga. 262, 266 (219 SE2d 399) (1975). Where the evidence conflicts as to the impact of the use on the public health and welfare, the trial court does not clearly err by concluding the property owner has carried its burden of proving the zoning is unsubstantially related to the public health, safety and welfare. *City of Atlanta v. McLennan*, 240 Ga. 407, 409 (2) (240 SE2d 881) (1977). While the evidence adduced at trial in this case clearly would have authorized the court to reach the opposite conclusion, on appellate review this Court will not re-weigh the evidence before the trial court in order to support the opposite conclusion. Hence, because the trial court's findings of fact are not clearly erroneous and no errors of law are presented, the judgment is affirmed.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Sears, J., who concur specially.*

SEARS, Justice, concurring specially.

The City of McDonough ("the City") appeals from the trial court's ruling (1) finding the zoning classification for property owned by Tusk Partners to be unconstitutional, and (2) ordering the City to rezone the property in a constitutional manner. Because I believe that Tusk Partners satisfied its burdens before the trial court to show by clear and convincing evidence both that it would suffer a significant detriment under the City's zoning and that the zoning bore an insubstantial relationship to the public interest, and because I believe that the City failed to rebuff that evidence, I would uphold the trial court's ruling. I write separately, however, in order to clarify and reiterate the appropriate standards of review to be utilized by trial and appellate courts in zoning cases.

1. The focus in all zoning cases is, of course, whether the party challenging existing zoning has suffered a significant deprivation that is insubstantially related to the public health, safety, morality, or welfare.[2] An existing zoning ordinance always is presumed to be valid, and a reviewing court must accord deference to that presumption of validity.[3] In order to prevail in the trial court, and before the

---

[2] *Holy Cross Lutheran Church v. Clayton County*, 257 Ga. 21 (354 SE2d 151) (1987); *Gradous v. Bd. of Commrs.*, 256 Ga. 469, 470 (349 SE2d 707) (1986); see *Delta Cascade Partners II v. Fulton County*, 260 Ga. 99, 100 (390 SE2d 45) (1990).

[3] *Holy Cross Lutheran Church*, supra; *Gradous*, supra; *Guhl v. Holcomb Bridge Rd.*

zoning authority is required to present any evidence, a party challenging existing zoning "is required to show by clear and convincing evidence *both* that it will suffer a significant detriment under the existing zoning, and that existing zoning bears an insubstantial relationship to the public interest."[4] Only if this initial burden is met is the zoning authority required to bring forth justification for the zoning as reasonably related to the public interest.[5] Furthermore, the inquiry into the reasonableness of a zoning classification concerns constitutional reasonableness, not economic reasonableness.[6]

On appeal, this Court applies the "clearly erroneous" standard to its review of the trial court's findings of fact.[7] However, as is true with all cases, this Court owes no deference to the superior court's conclusions of law.[8] Because whether a landowner has satisfied his burden of showing the unconstitutionality of a zoning ordinance by clear and convincing evidence is a mixed question of law and fact, as is whether a zoning authority has established that its zoning classification is so related to the public interest as to uphold it in the face of a palpable challenge, this Court is free to independently review the basis of a trial court's ruling that a zoning ordinance is unconstitutional without any deference to the trial court's ultimate conclusion.[9] Only if this Court agrees with the trial court's conclusions of law is it bound to affirm.[10] In this regard, the majority opinion's statement that this Court "will affirm the ruling of a trial court on the constitutionality of a zoning ordinance unless that ruling is 'clearly erroneous' "[11] is true only to the extent that it applies to the trial court's findings of fact. Otherwise, this broad statement contradicts longstanding precedent concerning our standard of review.

2. This case concerns what this Court has referred to as "fringe property" — a residential property bordering commercial property, with the economic value of the property for residential use lessening with encroaching commercial development. When considering the

---

*Corp.*, 238 Ga. 322 (232 SE2d 830) (1977). See *DeKalb County v. Chamblee-Dunwoody Hotel Partnership*, 248 Ga. 186, 190 (281 SE2d 525) (1981).

  [4] *Holy Cross Lutheran Church*, supra (emphasis in original). See *Gradous*, supra; *Delta Cascade*, supra; *Flournoy v. City of Brunswick*, 248 Ga. 573, 574 (285 SE2d 16) (1981).

  [5] *City of Roswell v. Heavy Machines Co.*, 256 Ga. 472, 474 (349 SE2d 743) (1986); *Holy Cross Lutheran Church*, supra; *Gradous*, supra; *Delta Cascade*, supra; *Flournoy*, supra.

  [6] *Heavy Machines Co.*, supra; *Holy Cross Lutheran Church*, supra; *Flournoy*, supra; ·*Chamblee-Dunwoody Hotel Partnership*, 248 Ga. at 189.

  [7] *Dougherty County v. Webb*, 256 Ga. 474, 477, n. 3 (350 SE2d 457) (1986); *Heavy Machines Co.*, supra; *Bd. of Commrs. v. Skelton*, 248 Ga. 855 (286 SE2d 729) (1982).

  [8] *Holy Cross Lutheran Church*, supra; *Dougherty County*, supra.

  [9] *Holy Cross Lutheran Church*, supra; *Skelton*, 248 Ga. at 856-857; see *Bickerstaff Clay Products Co. v. Harris County*, 89 F3d 1481, 1486, 1488-1490 (11th Cir. 1996) (construing Georgia law).

  [10] *Skelton*, supra; *Holy Cross Lutheran Church*, supra.

  [11] Op. at 695.

zoning of "fringe properties," this Court has held that, " 'the local governing body is the more appropriate one to shape and control the local environment according to the best interests of the locality and its citizens. The local government has drawn the line as to these encroachments,' " and unless a property owner has satisfied its burden to bring forth clear and convincing evidence showing a significant deprivation and an insubstantial relationship to the public interest, the classification must be upheld.[12] Accordingly, our precedent indicates that when reviewing a superior court ruling that declares the zoning of a "fringe property" to be unconstitutional, extra scrutiny must be given to the basis of the trial court's ruling.

3. The majority states that so long as a property owner brings forth evidence showing "a down turn in viability of property under its current zoning, and a decrease in land value if the property remains under its current zoning," a trial court does not err by concluding the property owner has established a significant detriment. To the extent this statement means that the value of the property as it presently is zoned is a relevant consideration in determining whether there has been a significant detriment, it is correct.[13] However, it is established that in zoning controversies such as this one, the fact that property will be more valuable if rezoned is irrelevant.[14] Moreover, while property need not be rendered worthless in order for its owner to suffer an unconstitutional deprivation, where a landowner shows only that, unless it is permitted to sell property for commercial use, it will suffer economic loss, a trial court errs by concluding that an existing zoning classification is unconstitutional.[15]

Furthermore, the majority opinion states that if "the evidence conflicts as to the impact of the use on the public health and welfare, the trial court does not clearly err by concluding the property owner" has shown the classification is insubstantially related to the public interest. This conclusion not only accords undue deference to the trial court's conclusions of law, it overlooks this Court's obligation to examine the record for benefits to the public inuring from the challenged zoning classification.[16]

4. Turning to the facts of this case, the trial court made the following relevant findings of fact: (1) Tusk Partner's property ("the

---

[12] *Holy Cross Lutheran Church*, supra (citation omitted). See *Flournoy*, supra; *Gradous*, supra.

[13] *Chamblee Dunwoody Hotel Partnership*, 248 Ga. at 189.

[14] Id.; *Delta Cascade*, supra.

[15] *Holy Cross Lutheran Church*, 257 Ga. at 23; *Gradous*, 256 Ga. at 472. See *Delta Cascade*, 260 Ga. at 100; *Chamblee Dunwoody Hotel Partnership*, 248 Ga. at 189; *Koppar v. Griswell*, 246 Ga. 539, 540 (272 SE2d 272) (1980).

[16] See *Skelton*, 248 Ga. at 857; *Barrett v. Hamby*, 235 Ga. 262, 266 (219 SE2d 399) (1975).

property") faces Jonesboro Road, a major thoroughfare scheduled to be widened to four lanes with a dividing median, and a smaller connector road, and is "bracketed" between two major intersections; (2) nearby properties — parcels directly across Jonesboro Road from the property and within 4,000 feet to the east and west of the property — are zoned as C-1 for commercial use; (3) other nearby parcels are zoned as O-I for institutional office use; (4) a convenience store and gas station are located on property diagonally across Jonesboro Road from the property; (5) traffic on Jonesboro Road in the past several years has increased significantly, and that trend is predicted to continue; (6) long-time residents of nearby properties also located on Jonesboro Road stated on the record that their properties are no longer desirable for residences, primarily due to the dramatic increase in traffic; (7) the City acknowledged that residential properties along Jonesboro Road had been impacted by the increase in traffic; (8) with one exception, the development of new residential communities along the Jonesboro Road corridor where the property is located has occurred away from Jonesboro Road, with entrances located on streets that intersect Jonesboro Road; and (9) the proposed rezoning is consistent with the written guidelines of the Henry County/Joint Cities Land Use Plan, although inconsistent with the Land Use Map. These findings are supported by the record. Since they are not clearly erroneous, they may not be set aside by this Court.[17]

Based upon these findings, the trial court reached the following conclusions: (1) commercial development in and of itself is not harmful to the public health, safety or welfare (citing *Sellars v. Cherokee County*, 254 Ga. 496 (330 SE2d 882) (1985)); (2) the City's argument that adequate commercial development already exists on Jonesboro Road was legally insufficient (citing *Sellars*, supra); (3) Tusk Partners met their burden of showing by clear and convincing evidence that the current R-100 zoning was significantly detrimental to them, and insubstantially related to the public interest, and the City failed to rebut that showing; (4) the R-100 zoning must be struck down as unconstitutional.

While the trial court's conclusions are incomplete — it fails to explain why Tusk Partners satisfied its burden and why the City failed to rebut that showing — I nonetheless agree with its ultimate determination that the R-100 zoning is unconstitutional. The record

---

[17] *Skelton*, 248 Ga. at 857; *City of Atlanta v. McLennan*, 240 Ga. 407 (240 SE2d 881) (1977). The trial court also made findings regarding the value of the property as presently zoned versus its value as commercial property. As has been stated repeatedly by this Court, however, the fact that property will be more valuable if rezoned is immaterial. *Delta Cascade*, supra; *Chamblee Dunwoody Hotel Partnership*, supra.

shows that the classification significantly damages Tusk Partner's interest in its property. Because of its precise location on Jonesboro Road, the property's present suitability for residential development under R-100 appears to be negligible. The evidence of record also demonstrates that residential development under R-100 at this location will not become more feasible in the future, as the expansion of Jonesboro Road, and development along its corridor, continues. This conclusion is bolstered by the fact that surrounding properties already have been, or soon will be, developed commercially, and the fact that noteworthy residential development abutting this portion of Jonesboro Road has essentially ceased.

A zoning classification may be set aside if it " 'results in relatively little gain or benefit to the public while inflicting serious . . . loss to the owner.' "[18] The City argues that the property has value as zoned. While a relevant consideration, that argument standing alone does not show a gain or benefit to the public sufficient to justify the serious damage inflicted by the current zoning to Tusk Partner's ownership interest.[19]

As found by the trial court, and as supported by the evidence of record, because the R-100 zoning classification seriously damages the property's owner, and is not substantially related to the public health, safety, or welfare, the classification is unconstitutional and must be set aside.

I am authorized to state that Presiding Justice Fletcher joins in this special concurrence.

DECIDED NOVEMBER 3, 1997 —
RECONSIDERATION DENIED NOVEMBER 21, 1997.

*Jenkins & Nelson, Kirk R. Fjelstul, Peter R. Olson,* for appellants.
*Troutman Sanders, Richard A. Newton, Charles F. Palmer, Robert W. Kamerschen,* for appellee.

---

[18] *Skelton,* 248 Ga. at 856 (quoting *Barrett,* 235 Ga. at 266).
[19] Id.