S00A2086. CITY OF ATLANTA et al. v. TAP ASSOCIATES, L.P.
(544 SE2d 433)

FLETCHER, Presiding Justice.

This rezoning case involves 9.35 acres of property at the northwest corner of Phipps Boulevard and Lenox Road in the city of Atlanta. TAP Associates, a limited partnership, sought to rezone the land from residential to mixed-use development. The city council denied the application, and the developer appealed. Following a bench trial, the trial court found unconstitutional the city's existing zoning and the proposed zoning in the city's Comprehensive Development Plan. We granted the city's discretionary application to appeal to consider whether the trial court correctly rejected the city's all-residential zoning of TAP's property. Because we conclude that the developer has not met its burden of proving that the city's zoning presents a significant loss that is unjustified by any public benefit, we reverse.

## FACTS

The 9.35-acre tract is bounded on the east by Phipps Boulevard across from Phipps Plaza mall; on the south by Lenox Road, which was formerly known as the Buckhead Loop; on the north by a four-story apartment complex, Estate at Phipps, and a 22-story condominium tower, Regency Park; and on the west by North Stratford Road, a street of single-family residences in the North Buckhead neighborhood. TAP bought the property in 1990 as part of a larger tract, but subsequently sold the northern portions to other developers. Although TAP's remaining property is currently zoned as single-family residential, the city has stipulated that this zoning designation is outdated. In its Comprehensive Development Plan, the city has designated 7.27 acres of TAP's property that fronts Phipps Boulevard and Lenox Road as high-density or very-high density residential and the remaining 2.08 acres that front North Stratford Road as single-family residential.

TAP filed its application in 1997 to rezone the 9.35 acres from residential to a mixed-use development. It proposed building two 200-unit residential buildings, a 400-room hotel, a free-standing restaurant, and two office buildings of 14 and 18 stories. In support of its application, TAP contended that the designation of the property for high-density and very high-density residential use in the Comprehensive Development Plan was outdated. The Atlanta Zoning Review Board and the city council's zoning committee recommended denying the rezoning application as inconsistent with the city's land use plan. Following their recommendations, the city council voted to deny TAP's rezoning application. TAP then filed this lawsuit seeking to

have the city's all-residential zoning declared unconstitutional and to require the city to rezone the property for mixed use.

## LAND USE PLANNING IN ATLANTA

Any rezoning of property in Atlanta must be consistent with the land use plan in its Comprehensive Development Plan.[1] The CDP is revised annually, adopted as an ordinance by the city council, and takes precedence over the city's zoning ordinance.

The 1997 CDP, which was in effect when TAP filed its rezoning application, states the preservation of neighborhoods as its first general policy. Additional general policies are to encourage mixed-use development around transit stations and major transportation intersections and encourage medium and high-density residential uses.

Among the specific land use policies for the neighborhood planning unit that includes North Buckhead is the policy to keep residential the area north of Lenox Road along Phipps Boulevard. The 1997 and 2000 plans specifically state the following policy:

> Maintain the Buckhead Loop/Wieuca Road Connector [Phipps Boulevard] as the firm boundary between residential land uses north of the boundary and mixed uses south of the boundary. Permit no nonresidential uses to encroach upon the single-family uses of the neighborhood north of the Buckhead Loop/Wieuca Road Connector.

Other specific policies in the 1997 and 2000 plans seek to protect the boundaries of the single-family and low-density residential neighborhoods, including North Buckhead; encourage low-density, multifamily housing as transition zones between single-family areas and adjacent higher density areas; and foster further development and high-density residential and mixed uses in the areas around MARTA stations.

The 1993 Buckhead Transit Station Area Development Study also recommends that the city limit land use in the northeast quadrant of the Buckhead Loop and Georgia 400 to residential use. To implement this policy, the study states that the city should limit high-density residential use to land with access to the Wieuca Connector and should retain the single-family characteristics of North Stratford Road.

---

[1] See *Moore v. Maloney*, 253 Ga. 504, 507 (321 SE2d 335) (1984).

## LEGAL STANDARD IN REZONING CASES

A zoning ordinance is presumed to be valid.[2] In a rezoning action, the only question is the constitutionality of the existing zoning on the property.[3] The property owner has the burden of proving by clear and convincing evidence that (1) the existing zoning presents a significant detriment to the landowner and (2) the existing zoning is not substantially related to the public health, safety, morality, and welfare.[4] If the property owner meets its burden, then the governing authority must introduce evidence showing the existing zoning is reasonably related to the public health, safety, and welfare.[5] Once the city justifies its zoning as reasonably related to the public interest, the trial court must weigh the public benefit of the existing zoning against the detriment to the property owner. When the validity of the legislative classification for zoning purposes is fairly debatable, the legislative judgment must be allowed to control.[6]

In this case, the trial court found that the plaintiff had proven by clear and convincing evidence that the city's all-residential zoning constitutes a significant detriment to the property owner and is unsubstantially related to the public health, safety, morality, and welfare and that the city had failed to prove by a preponderance of the evidence that its existing or proposed zoning was reasonably related to the public health, safety, morality, and welfare. In reviewing the trial court's order, we must accept its factual findings unless they are clearly erroneous, but owe no deference to the trial court's legal conclusion that the existing zoning classification is unconstitutional.[7]

### 1. Significant Detriment to the Landowner

None of the trial court's factual findings concerning the entire tract's lack of economic feasibility deal separately with the 2.08-acre tract designated for single-family residential housing. The testimony of appraisers for both TAP and the city shows that the value of the property on North Stratford when zoned for single-family homes is the same as similarly situated property in other north Atlanta neighborhoods. The TAP appraiser valued the property on North Stratford

---

[2] *Guhl v. Holcomb Bridge Rd. Corp.*, 238 Ga. 322, 323 (232 SE2d 830) (1977).

[3] See *DeKalb County v. Dobson*, 267 Ga. 624, 626 (482 SE2d 239) (1997).

[4] See *Gwinnett County v. Davis*, 268 Ga. 653, 654 (492 SE2d 523) (1997); *Gradous v. Board of Comm'rs*, 256 Ga. 469, 471 (349 SE2d 707) (1986).

[5] See *City of Roswell v. Heavy Machines Co.*, 256 Ga. 472, 474 (349 SE2d 743) (1986); *Gradous*, 256 Ga. at 471.

[6] See *Fulton County v. Wallace*, 260 Ga. 358, 361 (393 SE2d 241) (1990).

[7] See *Gwinnett County v. Davis*, 268 Ga. at 654.

at $490,000 based on comparisons to the sales of other lots in the same market area. As part of his evaluation, he assumed that two 14-story buildings and one 25-story building would be built on the remaining portion of TAP's property. Similarly, the city's appraiser testified that the four potential lots were valued at $125,000 each. Thus, there was no showing at trial that TAP has suffered a significant loss concerning the property zoned single family.

In addition, a resident who lives across from the DOT detention pond on North Stratford testified about the viability of his street, including its south end, for single families. Although TAP's president testified that there had been no buyers interested in the vacant property on North Stratford, he admitted that the company had never made any effort to market it as single family lots, such as platting the property, listing it with a residential real estate firm, or placing for sale signs on North Stratford Road. A property owner's inability to sell its property under the current zoning classification cannot form the basis for a finding of significant detriment if the property owner has failed to make any effort to market or sell the property and thus make it economically feasible under its current classification.[8] Based on this evidence, we conclude that the trial court erred in finding that TAP presented clear and convincing evidence of a significant detriment concerning the property designated as single-family residential on North Stratford Road.

## 2. Relationship of Zoning to the Public Interest

The public benefit issue here, as in all rezoning cases, is whether the city's choice of a zoning classification bears a substantial relationship to the public interest.[9] The trial court's order, however, fails to address whether the city's designation of TAP's property as solely residential is substantially related to the public health, safety, and welfare.

Experts for both TAP and the city agreed that protecting single-family homes in the city is in the public interest. The city's expert, a former city zoning administrator, described Atlanta's single-family neighborhoods as an "irreplaceable resource." A TAP expert witness on urban design testified that having single-family lots on the east side of North Stratford would protect the existing single-family lots across the street on the west side. The experts also testified about the desirability of providing buffers and transitions from commercial to

---

[8] See *Holy Cross Lutheran Church v. Clayton County*, 257 Ga. 21, 22 (354 SE2d 151) (1987); *DeKalb County v. Blalock Machinery & Equipment Co.*, 247 Ga. 671, 672 (278 SE2d 374) (1981).

[9] See *Holy Cross*, 257 Ga. at 23.

high-density residential to single-family residential areas, which is what the city has accomplished through its zoning of TAP's property.

Moreover, the city's zoning decision is consistent with the policies and long-range planning goals for the area as adopted in the comprehensive development plans and the Buckhead transit station report. These development proposals were adopted after extensive study and often contentious debate among the interested parties, including city planners, the business community, and neighborhood residents, about the best plan for managing the growth and development of the area.

The fact that TAP presented evidence that its proposed mixed-use development would also protect the single-family neighborhood and provide other possible advantages to the public is irrelevant. The issue is not whether the city could have made a different decision or better designation in zoning TAP's property, but whether the choice that it did make benefits the public in a substantial way.[10] Because the evidence at trial showed that the city's current designation of TAP's property as high-density, very high-density, and single-family residential is justified by the public's valid interest in protecting Atlanta's neighborhoods, the trial court erred in finding that TAP met its burden of proof by clear and convincing evidence on the public benefit issue.

*Judgment reversed. All the Justices concur, except Hunstein, Carley, and Thompson, JJ., who dissent.*

CARLEY, Justice, dissenting.

The majority holds that the trial court erroneously "rejected the city's all-residential zoning of TAP's property[, b]ecause we conclude that the developer has not met its burden of proving that the city's zoning presents a significant loss that is unjustified by any public benefit. . . ." However, I submit that the trial court was authorized to find that TAP proved that the existing zoning of its property is unjustifiably confiscatory. Therefore, I dissent.

A zoning ordinance is presumptively valid, but, since *Tuggle v. Manning*, 224 Ga. 29, 33 (159 SE2d 703) (1968), this Court has recognized that

> [z]oning laws and regulations must meet the demands of the constitutional prohibition against the taking of private property for public use without just compensation, and restrictions which are arbitrary or unreasonable or lacking in any

---

[10] See *Holy Cross*, 257 Ga. at 23 (relying on evidence of "benefit to the public in preserving the existing residential zoning . . . to maintain the integrity of the adjoining residential neighborhood").

substantial relation to the public health, safety, morals, or general welfare come within the constitutional inhibition. . . .

To prove that the existing zoning was such a "taking," TAP, as the property owner, had the burden of rebutting the presumption of the constitutionality of the all-residential classification by clear and convincing evidence. *Gradous v. Bd. of Commrs. of Richmond County*, 256 Ga. 469, 471 (349 SE2d 707) (1986). The trial court concluded that TAP successfully proved its constitutional claim by clear and convincing evidence. Although this Court does not defer to the trial court on the applicable law, we must accept its factual findings unless they are clearly erroneous. *Moon v. Cobb County*, 256 Ga. 539 (350 SE2d 461) (1986).

In reversing the finding that the existing all-residential zoning is significantly detrimental to TAP, the majority holds that "[n]one of the trial court's factual findings concerning the entire tract's lack of economic feasibility deal *separately* with the 2.08-acre tract designated for single-family residential housing." (Emphasis supplied.) However, the *entire* 9.35-acre tract is zoned residential, and the only distinction is that the 2.08 acre parcel is zoned for a lower *density* than the remaining 7.27 acres. TAP contends that the tract is, in its *entirety*, economically unfeasible for exclusive residential development of *any* density. Compare *Pennington v. Rockdale County*, 244 Ga. 743 (262 SE2d 59) (1979). Because the dispute between the City and the landowner involves the zoning applicable to the entire tract, it is clear that the evidence and the trial court's findings address that question.

Without citing any supporting authority, however, the majority focuses instead on whether TAP "showed only a diminution in the value of a *part* of [its] property by reason of the zoning classification . . . . [Cit.]" (Emphasis supplied.) *Pennington v. Rockdale County*, supra at 744. The relevant legal issue is not whether the portion of the tract zoned for single-family residences has a separate and distinct value for that purpose. The proper inquiry is whether TAP suffers a significant hardship resulting from the residential classification covering its entire tract and, in making that determination, the fact that the lower and higher densities are *adjoining* uses cannot simply be ignored. "Property is said to take its character from the uses which surround it, and an analysis of the adjacent uses in relation to the uses permitted by the zoning ordinance lies at the heart of most of the zoning decisions." 1 Anderson's American Law of Zoning (4th ed.), § 3.30, p. 184 (1995). Obviously, if the 7.27 acres are not economically viable for high- or very high-density *residential* development exclusively, that would have a potentially adverse effect on

the economic viability of the adjoining 2.08 acres for single-family housing. "[A] zoning ordinance restricting an area to residential use is void as to property located in the area but so situated in relation to a commercial zone as to be peculiarly unattractive, if at all salable, for residential uses. [Cit.]" *Barrett v. Hamby*, 235 Ga. 262, 265 (219 SE2d 399) (1975). Here, the trial court specifically held that

> [T]he height-plane restrictions imposed by the City's zoning ordinance would severely limit the height at which residential towers could be built on the [remaining 7.27 acres]. As a result of lower building heights, an all-residential development would have diminished view corridors and magnified traffic and noise problems, which would further reduce its marketability and viability.

Therefore, even if the smaller parcel could be developed for single-family residences, it would negatively impact the development of the larger portion for residential purposes. I believe that the trial court properly addressed the issue from the perspective of the residential classification of the whole tract, and that it would have been error for it to do otherwise. *Pennington v. Rockdale County*, supra. Because the single-family classification should not be addressed separately, the majority applies an erroneous legal analysis in its review of the trial court's order.

"[I]t is not necessary that the property be totally useless for the purposes classified. [Cit.]" *Barrett v. Hamby*, supra at 266.

> Where a property owner adduces evidence that establishes a down turn in viability of a property under its current zoning and a decrease in land value if the property remains under its current zoning classification, a trial court does not clearly err by concluding the property owner has carried its burden of proving a significant detriment. [Cits.]

*City of McDonough v. Tusk Partners*, 268 Ga. 693, 695-696 (492 SE2d 206) (1997). The majority does not dispute that, in accordance with this applicable standard, TAP submitted clear and convincing evidence that the entire 9.35 acres was not economically feasible for an exclusively residential development of any density. According to the trial court's comprehensive order:

> The subject property is not suitable for residential uses only. It borders a busy intersection and is bounded by commercial and office development across Phipps Boulevard and the Buckhead Loop. A multi-level parking deck behind the Parisian department store in Phipps Plaza is located directly

across Phipps Boulevard, and the property adjacent to the parking deck recently has been rezoned from high-rise residential to a use that allows a 28-story office building and a multi-story parking deck. Directly south, across the Buckhead Loop, is property that also has been rezoned and approved for mixed use development, including three high-rise office buildings and a 250-unit high-rise residential building.

A review of the record shows ample evidence to support the trial court's finding that the entire 9.35-acre tract in question is not economically suitable for exclusive residential development and that TAP therefore suffers a significant detriment from the existing classification which limits its property to that use. That being the case, this Court should "not re-weigh the evidence before the trial court in order to support the opposite conclusion." *City of McDonough v. Tusk Partners*, supra at 696. By predicating its reversal of the trial court's order on the erroneous legal theory that the relevant issue is density of development on separate portions of the tract, rather than the residential classification applicable to the entire parcel, the majority, in effect, engages in an unauthorized reweighing of the evidence. Applying the proper legal analysis, we should be compelled to affirm the trial court's factual finding that the existing all-residential zoning constitutes a substantial detriment to TAP, because that finding is not clearly erroneous.

Turning to the other element of the constitutional claim, the majority concludes that, because the existing all-residential classification "is justified by the public's valid interest in protecting Atlanta's neighborhoods, the trial court erred in finding that TAP met its burden of proof by clear and convincing evidence on the public benefit issue." However, the parties do not dispute the general principle that maintaining and developing stable residential neighborhoods is a desirable goal for any municipality. The proper inquiry is whether or not that civic objective is substantially promoted by the existing all-residential classification of the developer's property. *Gradous v. Bd. of Commrs.*, supra at 471. The focus of that relevant determination is on whether the commendable aim of protecting neighborhoods, " 'when applied to [this] particular piece of property and [this] particular set of facts and circumstances[, is] so arbitrary and unreasonable as to result in a confiscation of the property.' " *Tuggle v. Manning*, supra at 33. Thus, the benefit to be derived from zoning in general does not control when the landowner shows that the existing classification of his specific property does not promote that goal.

Contrary to the majority opinion, the trial court's order contains

extensive findings which address the relationship between the City's aim of fostering residential neighborhoods and the current zoning of TAP's property. To give but one example, the trial court cited expert testimony to the effect that

> maintaining the Buckhead Loop as a firm boundary between residential and non-residential uses is an outdated policy that no longer makes sense given the changes that have occurred and are anticipated in the surrounding area, all of which have taken place since the City first articulated its "line in the sand" policy in the late 1980[']s. These changes include the construction of the Buckhead Loop, Georgia 400, the Buckhead MARTA station and Phipps Boulevard, the expansion of Phipps Plaza and extensive commercial development across from the subject property along the Buckhead Loop and Phipps Boulevard. . . . [Moreover, the] decision . . . in 1993 to continue to maintain the Buckhead Loop as a firm boundary was not a planning decision but rather a political compromise incident to completing the Buckhead Transit Station Area Development Study ("Buckhead TSADS"). Unable to reach a consensus about the appropriate zoning classification for the subject property, [the former Commissioner of Planning and Development for the City] agreed to maintain the status quo in order to complete the study. . . .

This expert testimony, coupled with additional clear and convincing evidence specifically cited in the order, authorized the trial court to find that TAP proved that, under the present circumstances, there is no substantial relationship between the City's promotion of residential neighborhoods and the existing all-residential zoning of the tract. The facts, as found by the trial court, place this case squarely within the holding that,

> "[w]here property is situated at the intersection of two heavily traveled thoroughfares, in the midst of commercial establishments, and has little suitability for residential use, but rather is a prime business site, the zoning thereof for residential uses only has no tendency to promote the public health, safety, morals, convenience, or general welfare, and bears no reasonable relation thereto and, as applied to such property, is arbitrary, unreasonable, and beyond the zoning power."

*Tuggle v. Manning*, supra at 33. Where, as here, the evidence authorizes a finding that the municipality does not derive any benefit from

maintaining the existing zoning, "the trial court does not clearly err by concluding the property owner has carried its burden of proving the zoning is unsubstantially related to the public health, safety and welfare. [Cit.]" *City of McDonough v. Tusk Partners*, supra at 696. Because the majority merely cites evidence supporting, but not demanding, a contrary finding and then engages in an unauthorized reweighing of the evidence to reach the opposite conclusion, I dissent.

I am authorized to state that Justice Hunstein and Justice Thompson join in this dissent.

DECIDED MARCH 21, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001.

*Susan P. Langford, David D. Blum, Lemuel H. Ward*, for appellants.

*Kilpatrick Stockton, Wyckliffe A. Knox, Jr., Michael E. Brooks*, for appellee.

*Maddox, Nix, Bowman & Zoeckler, Robert L. Zoeckler, Thomas A. Bowman, John A. Nix, Susan M. Pruett*, amici curiae.