## 37598. DeKALB COUNTY v. CHAMBLEE DUNWOODY HOTEL PARTNERSHIP.
## 37599. GAINESBOROUGH 500 CIVIC ASSOCIATION, INC. et al. v. DeKALB COUNTY et al.

HILL, Presiding Justice.
Chamblee Dunwoody Hotel Partnership (hereinafter the "Hotel Partnership") owns two tracts of land which lie south of I-285

and west of Chamblee-Dunwoody Road in DeKalb County. The smaller tract (5.3937 acres) was zoned commercial (O-I) in November of 1970; the larger tract (8.4209 acres) has been zoned single family residential (R-100) since the adoption of the DeKalb County Zoning Ordinance in 1956. In late 1979 the Hotel Partnership applied to the DeKalb County Planning Department to change the zoning on the larger tract from R-100 to O-I. On February 26, 1980, the Board of Commissioners of DeKalb County denied the application for rezoning of the larger tract as O-I, and, on motion of one of the Commissioners, rezoned the larger tract to single family attached residential, five units per acre (RA-5) (condominiums).

On March 4, 1980, the Hotel Partnership filed suit in DeKalb County Superior Court challenging the constitutionality of the RA-5 zoning and any zoning classification other than O-I or C-2 as applied to the larger tract. The trial court ruled in the Hotel Partnership's favor, declaring that any residential zoning of the property would be unconstitutional and ordering the county to rezone the property in a constitutional manner. The county appeals.

The evidence shows that the subject property lies south of I-285 and west of Chamblee-Dunwoody Road. South of I-285, Chamblee-Dunwoody is a two lane road, although the "bridge" over I-285 has recently been widened from two lanes to five lanes. DeKalb County officials testified, however, that even given the widened bridge, DeKalb County has no plans to widen Chamblee-Dunwoody Road south of I-285. It is unclear whether the federal government or DeKalb County has jurisdiction over the portion of Chamblee-Dunwoody Road fronting the subject property, although it was established that the federal government controls the "through access" within some unspecified number of feet of major thoroughfares, e.g., I-285. There was however no evidence that the portion of Chamblee-Dunwoody Road south of I-285 is scheduled for widening from its current two lanes.

The 5.3937 acre tract owned by the Hotel Partnership and a smaller tract lie north of the subject property and alongside an exit ramp off I-285. The 5.3937 acre tract is zoned O-I and is undeveloped. The other tract is adjacent to the I-285 exit ramp, is zoned C-I and is occupied by a Fina Station. Another small tract that lies directly across Chamblee-Dunwoody Road and alongside a frontage (access) road parallel to I-285 is zoned C-1 and is occupied by a Standard Station. Other commercial establishments are adjacent to the Standard Station along the frontage road. Other than that property, all of the property in the immediate area (south of I-285 and east and west of Chamblee-Dunwoody Road) is zoned R-100, and with two exceptions it is all used for single family homes ranging in value from

$70,000 to $170,000.[1] One exception is a day-care center which is a nonconforming use located on a 2 1/2 acre tract zoned R-100 that lies directly across Chamblee-Dunwoody Road from the subject property; the other exception is a tract on the southwest corner of East Nancy Creek Drive and Chamblee-Dunwoody Road which is used for an unspecified office institutional use.

The trial court found that the subject property has a value of less than $300,000 as presently rezoned, but that if rezoned to O-I its value would exceed $1,000,000 and to certain users would be $1,400,000 to $1,800,000. The trial court also found that "the property currently has no economic return to the owners since the only improvements on the property consist of two dilapidated single family dwellings. . . ." And in an apparent reference to the day-care center, the trial court found that "use of this property for Office and Institutional use is consistent with the use across from the subject property across Chamblee-Dunwoody Road."

Witnesses for the county testified that: DeKalb County's 20-year projected development plan does not provide for widening of Chamblee-Dunwoody Road south of I-285 through the residential areas. Children who live east of Chamblee-Dunwoody Road must cross it to reach Nancy Creek Elementary School. An O-I use would have a greater adverse impact on traffic than will the RA-5 use; the traffic impact of an O-I use would be more than the current road system could handle. A condominium or apartment development could be built using the existing topography, while an office development would require considerable grading and leveling. The property would be worth $60,000/acre if zoned O-I and is worth $35,000/acre zoned RA-5. The condominium market in the area is strong and condominiums built on the subject property would probably sell for $75,000 to $125,000, more likely the upper limit. A commercial development or office use on the subject property (and thus with very little buffer between the property and the nearest homes) would cause an immediate diminution in value of 10% of the value of the $80,000 homes located nearest to the subject property, and would lead to deterioration of the neighborhood over a period of time.

Witnesses for the Hotel Partnership testified that: DeKalb County designates Chamblee-Dunwoody Road as a major thoroughfare. The I-285 and Chamblee-Dunwoody interchange has the third highest interstate exchange traffic count in Georgia. On the

---

[1] Both an elementary school and a county park are located in this residential neighborhood.

northwest corner, a shopping center backs up to office and institutional use. A 400-room hotel is located on the northeast corner. One of the partners in the Hotel Partnership, having been qualified as an expert, testified that although the property would be worth $20,000 per acre if it were marketable for condominium use, in his opinion it was not marketable for condominium use.[2] Another expert witness called by the Hotel Partnership, however, testified that the property would be worth $30,000 per acre if utilized for condominiums. When asked "[I]s this 8.4 acre [tract] suitable for condominium use?", he responded, "There are many measures of suitability physically if you put condominiums on this property. It would be a great underuse of the property. There is no reason to have the condominiums upon the site for the interstate." He further testified that the property would be worth $126,324 per acre if zoned O-I and $165,528 per acre if zoned commercial.

1. After reviewing the evidence in this case, we find that the trial court erred in declaring the RA-5 zoning of the subject property unconstitutional. First we accept the position taken by the county governing authority that I-285 is a reasonable dividing line for zoning consideration purposes. Hence, although the impact of I-285 upon the subject property necessarily must be taken into account, as must traffic on Chamblee-Dunwoody Road south of I-285, the county may use I-285 as a starting point for zoning purposes and hence land uses north of I-285 typical of those frequently found adjacent to interstate highways need not be considered here.

Secondly, as we have said many times, "It is not sufficient to show that a more profitable use could be made of the property." *Avera v. City of Brunswick,* 242 Ga. 73, 75 (247 SE2d 868) (1978); *Guhl v. Par-3 Golf Club, Inc.,* 238 Ga. 43 (1) (231 SE2d 55) (1976); *Smisson Gardens, Inc. v. Doles,* 244 Ga. 468, 470 (260 SE2d 865) (1979); *Westbrook v. Board of Adjustment,* 245 Ga. 15, 16-17 (262 SE2d 785) (1980); *Koppar Corp. v. Griswell,* 246 Ga. 539 (272 SE2d 272) (1980). Land value depends upon land use and in a zoning contest the more intense use sought by the landowner invariably would increase the value of the land in question. Thus, the question is

---

[2] This witness's opinion that the property wasn't marketable for condominium use was based on his opinion that such a development would be uneconomical, i.e., the maximum price condominiums would sell for would be $70,000; and on his opinion that the property is too close to Chamblee-Dunwoody Road to be attractive for residential use. Witnesses for the county testified that the market for condominiums in the area, with special reference to property on Chamblee-Dunwoody Road, was strong, and that condominiums on the subject property would sell for $75,000 to $125,000.

not whether rezoning would increase the value of the land; the question is whether the existing zoning classification is depriving the landowner of property without due process of law. *Barrett v. Hamby,* 235 Ga. 262 (219 SE2d 399) (1975). Hence the evidence that the subject property would be more valuable if rezoned for use as a hotel borders on being irrelevant. On the other hand, the evidence as to the value of the land as zoned is critical.[3] And the fact that "the property currently has no economic return to the owners" is immaterial; by definition, undeveloped property never offers owners any economic return. But landowners may not decline to develop land in a permissible manner and concurrently use the fact that the land is undeveloped to show that the permitted use is unconstitutional.

Thirdly, our focus is not upon whether there was evidence to support the trial court's decision but upon whether there was evidence to support the county's decision. See *City of Atlanta v. Wansley Moving &c. Co.,* 245 Ga. 794, 797 (267 SE2d 234) (1980). As was said in Euclid v. Ambler Realty Co., 272 U. S. 365, 388 (47 SC 114, 71 LE 303) (1926): "If the validity of the legislative classification for zoning purposes be fairly debatable, the legislative judgment must be allowed to control."

In *Barrett v. Hamby,* supra, the landmark Georgia case on zoning, the evidence introduced by the property owner showed that the property was virtually worthless for residential use and the county did not dispute that evidence. Furthermore, the county offered only two rationales for refusing to zone the property for commercial use: the existence of undeveloped commercially zoned property in the area and the proximity of a high school. In contrast, here one of the Hotel Partnership's own witnesses admitted that the property has substantial value for condominium use, and the county also introduced evidence to this effect. Furthermore, the county showed that the RA-5 zoning was part of a plan to keep the area south of I-285 essentially residential by zoning for commercial development only alongside the ramps, tapering off to zoning for O-I use adjacent to the commercial zone, and zoning for high density residential use between the O-I use and the single family residential use. See *Hubert Realty Co. v. Cobb County Bd. of Commrs.,* 245 Ga.

---

[3] Citing *Guhl v. Holcomb Bridge Road Corp.,* 238 Ga. 322, 323 (232 SE2d 830) (1977), the county argues that in considering the second factor listed there (the extent to which the zoning restriction diminishes the value of the property), the values of comparable properties similarly zoned should be considered as opposed to the difference in value of the subject property if rezoned. See also *DeKalb County v. Post Properties,* 245 Ga. 214, 216, n. 4 (263 SE2d 905) (1980). We certainly agree that the difference in value of the subject property if rezoned is not the proper criterion.

236, 238 (264 SE2d 179) (1980). The county also established that the residential neighborhood bordering the subject property would be adversely affected by the planned construction of a hotel.[4]

The facts here do not rise to the level required by *Barrett v. Hamby,* supra, 235 Ga. 262, and its progeny. Granted the Hotel Partnership has shown that a more profitable use could be made of its property and has presented evidence to the effect that residential zoning of the property is not substantially related to the public welfare, yet the county has countered with a showing that the property as zoned has substantial value and that the zoning bears a substantial relationship to the public welfare by providing a buffer area between single family residential areas and nonresidential uses. Therefore, we find that the trial court erred in declaring the RA-5 zoning unconstitutional.

2. In case number 37599, the Gainesborough 500 Civic Association and Stephen B. Willenchek appeal the denial of their motion to intervene as party defendants. In view of our determination in Division 1 that the trial court erred in declaring the zoning unconstitutional, their appeal is moot.

*Judgment in case no. 37598 reversed. Appeal in case no. 37599 dismissed as moot.*

*Jordan, C. J., Marshall, Clarke and Gregory, JJ., concur. Smith, J., dissents in case no. 37598 and concurs in the judgment only in case no. 37599.*

DECIDED SEPTEMBER 8, 1981 —
REHEARING DENIED SEPTEMBER 23, 1981.

*Robert H. Walling, John I. Spangler, Gail C. Flake,* for appellant (case no. 37598).

*William E. Zachary, Jr., Richard L. Chambers,* for appellee (case no. 37598).

*Richard L. Chambers,* for appellants (case no. 37599).

*William E. Zachary, Jr., Robert Walling,* for appellees (case no. 37599).

---

[4] The existence of a day-care center across from the subject property is not consistent with the proposed use of the subject property as a hotel. Notwithstanding the fact that day-care centers and hotels are both permitted uses in O-I zones under the DeKalb County Zoning Ordinance, the difference in impact between the uses is too obvious to warrant extended discussion.