S00A1200. HENRY COUNTY et al. v. TIM JONES PROPERTIES, INC. et al.
(539 SE2d 167)

BENHAM, Chief Justice.

In its order declaring unconstitutional the re-zoning decision of the Board of Commissioners of Henry County, the trial court found that the commissioners' imposition of a zoning classification to the subject property was arbitrary and capricious and amounted to an unconstitutional taking, and that the zoning classification imposed amounted to "exclusionary zoning." We granted Henry County's application for discretionary review and asked the parties to address whether the trial court erred in making these findings.

In 1997, appellee Tim Jones Properties ("TJP") entered into a contract to purchase a 129-acre parcel of land in Henry County on Jonesboro Road approximately one-half mile west of its intersection with Interstate 75.[1] The contract was contingent upon the property being re-zoned from "RA/Agricultural" to a mix of commercial use and residential use at density levels acceptable to the purchaser. TJP filed a re-zoning application for "Planned Development," which sought to use 26 acres for commercial development and 103 acres for residences of 1,300-1,700 square feet on 6,000 square-foot lots. TJP amended its application to seek residential zoning that permitted single-family detached cluster homes ("R-M") since the "Planned Development" zoning classification did not permit 6,000 square-foot lots. Henry County's board of commissioners re-zoned the property to "Planned Development" that allowed commercial and residential development, but required extensive street, landscaping, and recreational improvements. In addition, the "Planned Development" classification required the residential portion of the development to be 75 percent "R-2" (18,000 sq. ft. lot size and 1,300 sq. ft. minimum house size) and allowed only 25 percent of the residential area to be "R-3" (12,000 sq. ft. lot with minimum house size of 1,050 sq. ft.). TJP filed suit, seeking a declaratory judgment that certain provisions of the new zoning were void and that the new zoning was unconstitutional.

During the pendency of that litigation, the board of commission-

---

[1] TJP subsequently closed on the purchase of 106 acres of the property, paying $14,150 per acre. TJP has retained an option to purchase on the remaining acreage which the Board of Commissioners initially re-zoned to commercial use.

ers modified portions of the county's zoning ordinance. Among other things, the new ordinances eliminated from the "R-M" classification single-family cluster housing, increased the minimum house size of "R-3" residences from 1,050 square feet to 1,300 square feet, and repealed the zoning provision that limited to 25 percent the "R-3" portion of the residential part of a "Planned Development." In light of the legislative action, the trial court, with the parties' consent, remanded the matter to the county commissioners for reconsideration. The board of commissioners then re-zoned the property to "Planned Development with conditions." The new zoning classification provided for "single-family detached R-2 and R-3 and with general commercial." In doing so, the commissioners left it up to TJP how much of the property would be developed as commercial and how much as residential. However, the county commission required that 40 percent of any residential development be R-3 and 60 percent be R-2, and that the R-3 lots be placed on the eastern portion of the site and the R-2 lots on the western portion. The county commissioners also set minimum requirements for lot size, lot width, and square footage in each of the residential categories.[2] In so doing, the board of commissioners made it impossible for TJP to build cluster homes. TJP returned to court seeking a declaration that the zoning decision was unconstitutional because the commissioners' action was an abuse of discretion that amounted to an unconstitutional taking of property without just compensation, and constituted exclusionary zoning. After a three-day bench trial, the trial court entered an order finding that the zoning classification of planned development with the conditions imposed was arbitrary and capricious and amounted to an unconstitutional taking. The trial court remanded TJP's re-zoning application to the board of commissioners in order that the board might impose a constitutionally permissible zoning classification on the property under the zoning ordinances in effect at the time TJP filed its initial application. We granted Henry County's application for discretionary review.

1. When a property owner contends that a zoning classification is unconstitutional, the burden is on the property owner to present clear and convincing evidence to rebut the presumption that the zoning classification is constitutional. *Gradous v. Bd. of Commrs.*, 256 Ga. 469, 471 (349 SE2d 707) (1986). The property owner must establish by means of clear and convincing evidence that the owner " 'will suffer a significant detriment under the existing zoning, and that the existing zoning bears an insubstantial relationship to the public

---

[2] Each R-2 house was required to be 1,800 sq. ft. on a lot of 18,000 sq. ft. that was 100-ft. wide. An R-3 home had to be 1,500 sq. ft. on a lot of 12,000 sq. ft. that was 75-ft. wide.

interest. [Cit.]'" *Gwinnett County v. Davis*, 268 Ga. 653, 654 (492 SE2d 523) (1997). In reaching its conclusion that the current zoning classification on TJP's property is unconstitutional, the trial court found that TJP had established with clear and convincing evidence that it had suffered a significant detriment as a result of the re-zoning and that the criteria set out in *Guhl v. Holcomb Bridge Road Corp.*, 238 Ga. 322 (232 SE2d 830) (1977), had been satisfied. In fulfilling our duty as an appellate court, we accept the trial court's findings of fact unless they are clearly erroneous; however, the trial court's conclusion that the zoning classification is unconstitutional is a question of law that is afforded no deference by the appellate court. *Gwinnett County v. Davis*, supra, 268 Ga. 653-654.

During the hearing, Henry County presented evidence that the county's comprehensive land use plan envisioned most of the property at issue being used for commercial purposes with a small section of the western portion being used for low-density residential. TJP presented evidence that the former owners had unsuccessfully sought to sell the property for various "commercial" prices for six years, and that the property to the east (toward the I-75 exchange) is zoned for commercial use, as is the property to the northeast. The property across Jonesboro Road is zoned for office and institutional use, and the property to the west is low-density residential. The commercial real estate broker who listed the property testified it was not suitable for commercial development, and others opined that only approximately one-sixth of the property (approximately 23 acres along Jonesboro Road) was suitable for retail commercial development. The owner of TJP testified that the property was not close enough to I-75 to be developed commercially, but the proximity of the I-75 interchange adversely affected the ability to develop the land as single-family residential lots similar to those farther removed from the interstate. A professor of city planning testified that there had been no new residential development within one mile of any I-75 interchange in Henry County. TJP's owner testified that the availability of sewer on the property made it more suitable for higher density residential development than the neighboring residential area which did not have sewer service. An expert appraiser testified that development of 5/6 of the property as residential under the 60-40 split mandated by the zoning classification would not be economically viable and would cause the developer to suffer a loss in excess of $1,000,000. Another developer/builder testified he would not purchase this property and develop it for residential use under the restrictions imposed by the zoning classification.

The county suggested that TJP's proposal for residential development of a greater density than that authorized by the board of commissioners was "out of character" for that part of the county. The

county manager testified that the density permitted by the zoning classification placed on this property was higher than the other residential development in the area, and the government was concerned about the impact the re-zoning of this property would have on adjacent land uses and the precedent the re-zoning would set. He testified that the preservation of a more "natural" area that resulted from a limitation on density was a legitimate planning objective for a local government, and stated that greater density was inappropriate on this property because the residential development nearby was of lower density.

Applying the *Guhl* factors, the trial court found that the property was not competitive for commercial development and that the current mix of small and large homes near the property, the "significant" non-residential uses on adjacent property, the lack of a market in the foreseeable future for most of the tract as "commercial" property, and the fact that all parties agreed that at least a small portion of the property at issue was suitable for commercial development, made it critical that adequate density on the residential portion be permitted. The trial court found that the property value of the tract had been significantly diminished by the imposition of the zoning restrictions that permitted residential development only of larger homes on larger lots in fixed percentages not required under the "Planned Development" zoning classification, and that the county had not presented any evidence of the public benefit which resulted from the 40/60 allocation of R-2 and R-3 zoning. The trial court determined that the zoning classification resulted in a depressed value for the property, a lack of marketability, and an inability to use the property as zoned. The court concluded that the board of commissioners' re-zoning decision was an arbitrary and capricious act, given the impracticality and infeasibility of using the property as commercial or as residential with the 40/60 allocation for residential development; the nature of the surrounding properties; the existing market demand; the changes in the area; the economic conditions affecting the property; the availability of public services; and the conditions placed on the development of the property for residential purposes.

TJP clearly established that requiring development of the entire tract for commercial use was a significant detriment to the property owner because such development was unfeasible. See *Candler & Assoc. v. City of Roswell*, 258 Ga. 621 (373 SE2d 19) (1988); *Rea v. City of Cordele*, 255 Ga. 392 (339 SE2d 223) (1986). TJP also showed that development of the property for residential use under the restrictions imposed by the zoning classification was a significant detriment to the owner in light of the non-residential zoning classifications placed on surrounding tracts, the lack of similar developments on similarly-situated property in the county, and the lack of a

market for the property for residential use as restricted by the zoning classification. See *Candler & Assoc. v. City of Roswell*, supra, 258 Ga. at 622; *City of Roswell v. Heavy Machines Co.*, 256 Ga. 472 (349 SE2d 743) (1986) (evidence that the current zoning was not "reasonable or appropriate"); *DeKalb County v. Albritton Properties Southeast*, 256 Ga. 103 (1) (a) (344 SE2d 653) (1986) (evidence of decreased viability of property due to the zoning classification). We affirm the trial court's decision that, using the *Guhl* factors, TJP carried its burden of showing the zoning classification under attack " 'is so detrimental to [TJP], and so insubstantially related to the public health, safety, morality and welfare, as to amount to an unconstitutional "taking," that is an arbitrary confiscation of [TJP's] property without compensation by the governing authority.' " *Gradous v. Bd. of Commrs.*, supra, 256 Ga. at 471.

2. Before the trial court, TJP contended that the county commission's failure to re-zone the property so as to permit development of cluster homes under a zoning classification that existed at the time of TJP's initial application but was repealed during the pendency of TJP's application had the purpose and effect of excluding low-to-moderate-income homebuyers from Henry County. In addition to finding that the zoning classification imposed on TJP's property was unconstitutionally arbitrary and capricious, the trial court also determined that the imposition of minimum lot and house sizes on residential development on this property "to a level which could not support such improvements," and the enactment of ordinances that eliminated cluster housing from unincorporated Henry County and limited apartments to four units per acre amounted to unconstitutional exclusionary zoning. In light of our affirmance of the trial court's ruling that the zoning classification was unconstitutional and the trial court's remand order instructing the county commission to reconsider TJP's application for re-zoning under the ordinances in effect at the time of TJP's initial application, we need not determine in this case whether the zoning classification applied to this property is unconstitutional as exclusionary zoning, or examine whether the county's ordinances which were adopted after TJP's re-zoning application and which do not permit cluster homes and which limit apartment units to four per acre are unconstitutional restrictions on land use.

*Judgment affirmed. All the Justices concur.*

SEARS, Justice, concurring.

I concur with the majority opinion's conclusion that, based upon the facts of this matter, the trial court correctly ruled that the zoning classification imposed by the County amounted to an unconstitutional taking without just and adequate compensation.

I write separately, however, to emphasize that the presumption of validity attaching to a governmental zoning decision can be overcome only by a plaintiff landowner's showing by clear and convincing evidence that the zoning classification is a significant detriment to him, and is insubstantially related to the public health, safety, morality, and welfare.[3] Only after both of these showings are made is a governing authority required to come forward with evidence to justify a zoning ordinance as reasonably related to the public interest.[4] If a plaintiff landowner fails to make a showing by clear and convincing evidence of a significant detriment and an insubstantial relationship to the public welfare, the landowner's challenge to the zoning ordinance fails.[5]

Furthermore, it is well established that " '(a) significant detriment to the landowner is *not* shown by the fact that the property would be more valuable if rezoned, or by the fact that it would be more difficult to develop the . . . property as zoned than if rezoned.' "[6] That is to say, a plaintiff landowner cannot satisfy his burden by showing that property could be put to a more profitable use if re-zoned.[7] Land value always depends upon land use, and it is invariable that a more aggressive use of land by a landowner generally will increase a property's value. But in zoning challenges, the pertinent question is not whether re-zoning would increase the value of property, but rather whether the existing zoning classification serves to deprive a landowner of property rights without due process of law.[8] "Hence, the evidence that the subject property would be more valuable if rezoned . . . borders on being irrelevant."[9] In cases such as this one, the only relevant evidence regarding the value of the subject property is its value as it currently is zoned.[10]

In this matter, I agree with the majority that the plaintiff landowner has shown that the property's present zoning classification is "so detrimental, and so insubstantially related to the public health, safety, morality and welfare, as to amount to an unconstitutional taking, that is an arbitrary confiscation of [the] property without

---

[3] *DeKalb County v. Dobson*, 267 Ga. 624, 626 (482 SE2d 239) (1997); *Delta Cascade Partners II v. Fulton County*, 260 Ga. 99, 100 (390 SE2d 45) (1990).

[4] *Dobson*, supra; *Flournoy v. City of Brunswick*, 248 Ga. 573, 574 (285 SE2d 16) (1981); *Delta Cascade*, supra.

[5] *Dobson*, supra; *Delta Cascade*, supra.

[6] *Dobson*, supra; *Delta Cascade*, 260 Ga. at 100. See *DeKalb County v. Chamblee Dunwoody Hotel Partnership*, 248 Ga. 186, 190 (281 SE2d 525) (1981); *Koppar Corp. v. Griswell*, 246 Ga. 539, 540 (272 SE2d 272) (1980); *Westbrook v. Bd. of Adjustment*, 245 Ga. 15, 16-17 (262 SE2d 785) (1980).

[7] *Dobson*, supra; *Chamblee Dunwoody Hotel Partnership*, 248 Ga. at 189.

[8] *Chamblee Dunwoody Hotel Partnership*, supra.

[9] Id. at 190.

[10] Id.

compensation by the governing authority."[11] Therefore, I concur.

I am authorized to state that Presiding Justice Fletcher joins in this concurrence.

DECIDED NOVEMBER 30, 2000.

*Crumbley & Crumbley, Wade M. Crumbley*, for appellants.

*Dillard & Galloway, G. Douglas Dillard, Andrea C. Jones*, for appellees.

*Schreeder, Wheeler & Flint, David H. Flint, Mark W. Forsling, Troutman Sanders, Harold G. Clarke, Charles F. Palmer, David C. Kirk, Wilson, Brock & Irby, Richard W. Wilson, Jr., Michele LeFaivre*, amici curiae.