S12A1599. CITY OF SUWANEE v. SETTLES BRIDGE FARM, LLC.
(738 SE2d 597)

HUNSTEIN, Chief Justice.

Appellant City of Suwanee appeals the judgment rendered against it in an inverse condemnation action brought by Appellee Settles Bridge Farm, LLC. At the conclusion of a bench trial, the trial court found that the City's enactment of an amendment to its zoning ordinance had effected an unconstitutional regulatory taking of a large parcel of land owned by Settles Bridge and awarded Settles Bridge more than $1.8 million in damages. The City appeals, contending, inter alia, that the case was unripe for judicial review due to

Settles Bridge's failure to exhaust its administrative remedies. We agree with the City that Settles Bridge should have exhausted its administrative remedies prior to initiating litigation in this matter, and we therefore reverse the judgment entered against the City.

In 2006 and 2007, Settles Bridge assembled approximately 36 acres of property in the Suwanee North area of the City of Suwanee. The Suwanee North area is located within an R-140 zoning district, comprised primarily of low-density residential development, and Settles Bridge intended to develop a residential subdivision on the property. In December 2006 Settles Bridge submitted a 41-lot subdivision plan to the City and ultimately obtained City approval of numerous variances for its anticipated development.

During the time it was pursuing the subdivision plan, Settles Bridge was contacted by Notre Dame Academy, which expressed an interest in purchasing the property to develop for use as a school. After confirming with a City planning official that schools were a permitted use within the R-140 zoning classification, Settles Bridge agreed to sell the property to Notre Dame. Accordingly, in February 2008, Settles Bridge and Notre Dame executed a purchase contract for the property, and Settles Bridge abandoned its subdivision plan.

Shortly thereafter, City officials learned of Notre Dame's interest in the property. Officials determined that the City's zoning ordinance, as then in effect, permitted the development of a school within the R-140 zoning classification "as of right," meaning that such a use would be authorized without any public review. At that point, the City was in the process of developing its 2030 Comprehensive Land Use Plan, which, among other things, called for remaining undeveloped property in the Suwanee North area to be developed for future single-family or compatible uses. On February 29, 2008, the Suwanee City Council adopted a three-month moratorium on the issuance of building and development permits within residential zoning districts for "large projects" exceeding certain square footage or acreage thresholds. The school envisioned by Notre Dame qualified as a "large project" covered by the moratorium.

In May 2008, the City Council amended the City's zoning ordinance to require a special use permit be obtained for large development projects within residential zoning districts, including but not limited to R-140. Under the special use permit ("SUP") amendment, "large development" is defined as a project involving (a) one or more buildings exceeding 20,000 square feet of enclosed floor area; (b) "cumulative land disturbance" exceeding five acres; or (c) creation of a residential subdivision exceeding seven lots. Projects that obtained the necessary approvals prior to enactment of the SUP amendment are exempted. Thus, though Settles Bridge's original subdivision

plan would have been exempted, any plan by Notre Dame to develop the property as the site for a school would require a special use permit.

Under the City's zoning ordinance, a special use permit may be issued only if the project in question is deemed "consistent with the needs of the neighborhood or the community," "compatible with the neighborhood," and "not . . . in conflict with the overall objective of the Comprehensive Plan." The zoning ordinance further requires that, in assessing an application for a special use permit, the City

> shall consider the policies and objectives of the Comprehensive Plan, particularly in relationship to the proposed site and surrounding area, and shall consider the potential adverse impact on the surrounding area, especially in regards [sic] but not limited to traffic, storm drainage, land values and compatibility of land use activities.

SUP applications are to be reviewed first by the City Planning Commission. After receiving the Planning Commission's recommendation and conducting a public hearing, the City Council makes the final decision regarding whether to issue a special use permit.

Neither Settles Bridge nor Notre Dame ever applied for a special use permit for any proposed use on the subject property. Instead, both parties filed suit against the City, challenging the legality of the moratorium and the SUP amendment. Notre Dame agreed to a settlement with the City and terminated its purchase contract with Settles Bridge. Settles Bridge persisted in its litigation against the City, which culminated in a week-long trial before an advisory jury. After receiving the advisory jury's responses to special interrogatories and conducting a follow-up hearing, the trial court held that the City by its enactment of the SUP amendment had effected a taking of the subject property. See *Gradous v. Bd. of Commissioners of Richmond County*, 256 Ga. 469, 471 (349 SE2d 707) (1986) (zoning ordinance effects a taking where it presents a "significant detriment" to the property owner and is "insubstantially related to the public health, safety, morality and welfare"); *Guhl v. Holcomb Bridge Road Corp.*, 238 Ga. 322 (232 SE2d 830) (1977) (setting forth six factors to be considered in deciding a zoning challenge). The trial court awarded Settles Bridge $1,814,063 in damages, as the amount by which the property's value had been diminished, plus $461,663.30 in prejudgment interest.

On appeal of a trial court's finding of an unconstitutional regulatory taking, this Court is bound to affirm the trial court's findings of fact unless they are clearly erroneous but must review de novo the

trial court's legal conclusions. *City of Atlanta v. TAP Assocs.*, 273 Ga. 681, 683 (544 SE2d 433) (2001). Before reviewing the merits of the case, we must first address the issue of ripeness, because if this case is unripe for judicial review, this Court is not authorized to decide it. See generally *Cheeks v. Miller*, 262 Ga. 687, 689 (425 SE2d 278) (1993).

As a general rule, before seeking a judicial determination that a local regulation is unconstitutional as applied to its property, a party must first apply to local authorities for relief. *Mayor & Aldermen of the City of Savannah v. Savannah Cigarette Amusement Svcs.*, 267 Ga. 173, 174 (476 SE2d 581) (1996); *Village Centers v. DeKalb County*, 248 Ga. 177 (2) (281 SE2d 522) (1981). Requiring exhaustion of administrative remedies "prevents unnecessary judicial intervention into local affairs and promotes judicial economy because [local authorities], unlike the court, have the power to grant the [zoning] relief sought." *Powell v. City of Snellville*, 266 Ga. 315, 316 (467 SE2d 540) (1996). Accord *Cooper v. Unified Govt. of Athens-Clarke County*, 277 Ga. 360 (589 SE2d 105) (2003). Here, to satisfy the exhaustion requirement, Settles Bridge should have submitted a special use permit application to the City Planning Commission for its review, to be followed by City Council review. Because Settles Bridge failed to apply for a permit, it did not exhaust its administrative remedies in this case.

However, this Court has recognized a narrow exception to the exhaustion requirement for situations in which the litigant establishes that submitting to the administrative process would be "futile." *Mayor & Alderman of the City of Savannah*, 267 Ga. at 174; *Powell*, 266 Ga. at 316. In the zoning context, our precedent establishes that "futility" will be found to exist "only where further administrative review 'would result in a decision on the same issue by the same body.' " (Citation omitted.) *Little v. City of Lawrenceville*, 272 Ga. 340, 342 (3) (528 SE2d 515) (2000). Accord *Powell*, 266 Ga. at 317 (futility established where exhaustion would require "another review by the City on the same issue"); *WMM Properties v. Cobb County*, 255 Ga. 436, 440 (3) (339 SE2d 252) (1986) (futility established where exhaustion "would result in a decision on the same issue by the same body"). Thus, the first step in establishing futility is to show that the administrative decision-maker to whom the litigant would be required to go to seek relief has already rendered a decision on the issue. See, e.g., *Little*, 272 Ga. at 342 (3). In this case, the "same body" requirement appears to have been met: the SUP amendment was considered first by the City Planning Commission and ultimately enacted by the City Council, which are the same two entities that review and decide SUP applications.

Even where a litigant would be required to return to the same administrative body that had already denied it relief, however, the futility exception does not apply if the issue presented is not the same as the issue previously decided adversely to the litigant. *DeKalb County v. Cooper Homes*, 283 Ga. 111 (1) (657 SE2d 206) (2008). In *Cooper Homes*, the plaintiff developer had been denied setback variances by the county Zoning Board of Appeals ("ZBA") and had also, in connection with the same building project, been denied land disturbance permits by the county Planning and Development Department. Id. at 111-112. The plaintiff sought review of the ZBA's decision on the variances by certiorari in superior court and in the course of that litigation also sought mandamus against the Planning and Development Department with respect to the land disturbance permits. Id. at 112. This Court held that the plaintiff had failed to exhaust its administrative remedies with respect to the land disturbance permits by failing to appeal the permit denial to the ZBA. Id. at 114-115 (1). Rejecting the plaintiff's futility argument, we noted that county ordinances prescribed completely different standards governing approval of variance applications versus approval of land disturbance permits; the ZBA had not had occasion to review the land disturbance permit application; and therefore it had not previously decided the "same issue" on which the plaintiff sought the court's review. Id. at 115 (1). Cf. *Powell*, 266 Ga. at 316 (plaintiff excused from applying to the City for rezoning of her property where the City had already twice zoned same property over the plaintiff's protests); *WMM Properties*, 255 Ga. at 440 (3) (plaintiff excused from seeking administrative relief from county commission where commission had already decided applicability of contested stipulations to plaintiff's property).

As in *Cooper Homes*, the issue on which Settles Bridge should have sought administrative review is not the same as the issue previously decided by the City Planning Commission and City Council. The issue previously decided was whether to amend the City's zoning ordinance to specify that, in certain primarily residential zoning districts where the landowner proposes a permitted use that exceeds certain size/scope thresholds, the landowner must first obtain a special use permit. The issue that would have been decided, had Settles Bridge exhausted its administrative remedies, is whether, and under what conditions, Settles Bridge should be granted a special use permit to build a school on its property, and would have required assessment of site-specific considerations regarding traffic, storm damage, land values, and the like. The standards under which a SUP application must be assessed, which are prescribed in the zoning

ordinance, are far different than the standards and procedures whereby the SUP amendment was adopted. See *Cooper Homes*, 283 Ga. at 113-115 (1).

The fact that Settles Bridge was pessimistic about its prospects for obtaining a special use permit, even if that pessimism was justified, does not prove that exhaustion of remedies would have been "futile" as this Court has defined that term. As we have recently held, the conduct of an administrative decision-maker "outside of and prior to the normal administrative process do[es] not ordinarily demonstrate futility." *Ga. Dept. of Community Health v. Ga. Society of Ambulatory Surgery Centers*, 290 Ga. 628, 629-630 (1) (724 SE2d 386) (2012). Thus, the evidence Settles Bridge has put forth in support of its allegation that City officials were improperly targeting Settles Bridge's property in enacting the SUP amendment, while perhaps relevant to the amendment's validity, is not relevant to the issue of futility. See *Marietta Properties, LLC v. City of Marietta,* 319 Ga. App. 184, 187 (2) (732 SE2d 102) (2012) (City's actions in enacting height ordinance which on its face applied to landowner's property did not demonstrate futility so as to excuse landowner's failure to apply for building permit).

Contrary to Settles Bridge's argument, our decision in *City of Albany v. Oxford Solid Waste Landfill*, 267 Ga. 283 (476 SE2d 729) (1996), does not demand a different result. In *Oxford*, the landowner had applied for and been denied the permit it wanted prior to the trial court's decision. Id. at 284 (1). In other words, the "same issue" had already been decided by the administrative decision-maker. Here, by contrast, Settles Bridge never actually applied for the permit it wanted. *Oxford*, therefore, does not control the outcome here.

Nor does it matter that Settles Bridge representatives appealed to City officials in opposition to the SUP amendment both informally and at the public hearing. These efforts do not constitute a fulfillment of the administrative process, nor does their lack of success demonstrate futility. See *Mayor & Aldermen of the City of Savannah*, 267 Ga. at 174 (exhaustion required despite fact that landowner had appeared at public hearing in unsuccessful effort to oppose rezoning).

In conclusion, Settles Bridge refused to engage in an administrative process that could have obviated the need for the protracted litigation that has unfolded. Accordingly, we conclude that the trial court erred in declining to dismiss this case due to Settles Bridge's failure to exhaust its administrative remedies, and we reverse.

*Judgment reversed. All the Justices concur.*

DECIDED FEBRUARY 18, 2013.

*Henderson & Hundley, Laurel E. Henderson, Chandler, Britt, Jay & Beck, Gregory D. Jay,* for appellant.

*Mahaffey, Pickens & Tucker, Richard L. Tucker, Jr., Gerald Davidson, Jr., John D. Gussio, Andrew D. Stancil,* for appellee.

*Carothers & Mitchell, Thomas M. Mitchell,* amicus curiae.