S12G1885. MORTGAGE ALLIANCE CORPORATION v. PICKENS COUNTY.
(751 SE2d 51)

NAHMIAS, Justice.

This case involves an effort by Mortgage Alliance Corporation ("MAC") to develop property in Pickens County as a residential subdivision called Silverstone. In August 2008, MAC filed a complaint in superior court against the county and various county officials alleging, among other things, that an August 2006 letter to MAC from the county's sole commissioner (the "August 2006 Letter"), which said that the county's position was that any proposal to develop MAC's property as a subdivision would need to comply with a recent amendment to the county's land use ordinances, resulted in a taking of MAC's property without just compensation. The trial court granted summary judgment to the defendants on the ground that MAC's complaint was untimely under OCGA § 5-3-20.[1] The Court of Appeals affirmed, see *Mortgage Alliance Corp. v. Pickens County*, 316 Ga. App. 755 (730 SE2d 471) (2012), and we granted MAC's petition for certiorari.

---

[1] OCGA § 5-3-20 states:
    (a) Appeals to the superior court shall be filed within 30 days of the date the judgment, order, or decision complained of was entered.
    (b) The date of entry of an order, judgment, or other decision shall be the date upon which it was filed in the court, agency, or other tribunal rendering same, duly signed by the judge or other official thereof.
    (c) This Code section shall apply to all appeals to the superior court, any other law to the contrary notwithstanding.

The question that we posed to the parties in granting certiorari focused on whether and when the August 2006 Letter was "entered" and "filed" within the meaning of OCGA § 5-3-20, thereby triggering the 30-day deadline for MAC to file an appeal to the superior court. We have concluded, however, that this case is properly resolved on the ground that the August 2006 Letter was not a "decision" within the meaning of OCGA § 5-3-20, and indeed the county never made a final decision on MAC's Silverstone proposal. Consequently, MAC's inverse condemnation claim never ripened for judicial review, and the trial court should have granted summary judgment to the defendants on this ground. Although the trial court and the Court of Appeals erred in concluding there was an appealable decision, they reached the right result, and we therefore affirm the Court of Appeals' judgment. See *WMW, Inc. v. American Honda Motor Co.*, 291 Ga. 683, 683 (733 SE2d 269) (2012) (affirming the Court of Appeals' judgment on certiorari under the right-for-any-reason doctrine). Because the August 2006 Letter was not a "decision," there is no need for us to address — and the Court of Appeals did not need to address — whether and when the letter was "entered" or "filed"; the portion of the Court of Appeals' opinion discussing that issue should be treated as dicta.

1. In reviewing an order granting a motion for summary judgment, we view the evidence in the record and make all reasonable inferences from it in the light most favorable to the non-moving party and decide de novo whether the grant of summary judgment was appropriate. See *Smith v. Ellis*, 291 Ga. 566, 567 (731 SE2d 731) (2012); *Cowart v. Widener*, 287 Ga. 622, 624 (697 SE2d 779) (2010). So viewed, the record shows as follows. In late 2004, MAC purchased a 180-acre parcel of land in Pickens County for the purpose of developing a residential subdivision. MAC had recently submitted to the county a preliminary plat to develop the property as a 240-lot subdivision called "Silverstone," with an onsite private sewer system and .75-acre lots. Norman Pope, the county's director of planning and zoning, had reviewed the plat informally and advised MAC that the proposal was feasible and would be evaluated under the county land use restrictions then in effect. Rodney Buckingham, the county's land development officer, was quoted in the local newspaper saying that the Silverstone proposal would be reviewed under the existing ordinances.

In January 2005, Robert Jones took office as the sole commissioner of Pickens County.[2] The commissioner made final decisions

---

[2] Pickens County changed to a three-member Board of Commissioners on January 1, 2013. See Ga. L. 2010, p. 3704, §§ 1-2 (a), 1-4 (a).

about zoning and land use for the county.[3] At a public meeting on February 7, 2005, Commissioner Jones adopted a resolution imposing a county-wide, six-month-long moratorium, which was later extended to August 8, 2006, on the issuance of construction permits for properties with privately owned sewer systems, due to an asserted lack of adequate regulation. On February 11, 2005, Buckingham denied approval of the Silverstone preliminary plat, asserting various shortcomings unrelated to its sewer plan, and on May 20, 2005, MAC submitted a revised preliminary plat, which was not approved for non-sewer reasons.

At a public meeting on August 8, 2006, the day that the private sewer moratorium expired, Commissioner Jones adopted a resolution amending the County Code to require, among other things, a minimum lot size of one acre for residential subdivisions with private sewer systems or septic tanks (the "2006 Code Amendment"). A few days later, Jones sent a letter to MAC's CEO indicating that the Silverstone project would be evaluated under the amended County Code despite the previous indications by county officials that the project would be evaluated under the pre-amendment standards.[4] The August 2006 Letter said:

> The purpose of this letter is to follow up on several conversations you have had with various employees of Pickens County regarding your development of [the property]. . . . It is the County's position that any proposal to develop this property as a subdivision shall comply with the current code of ordinances of Pickens County.

---

[3] See, e.g., Pickens County Code of Ordinances §§ 2-273 (authorizing the county planning commission to prepare and recommend to the commissioner amendments or updates to the Joint Comprehensive Plan for Pickens County), 26-41 (requiring commissioner approval for development permits within the groundwater recharge area district where a citizen requests a public hearing), 38-10 ("Any party aggrieved by any decision of the county development officer may within 30 days thereafter appeal therefrom to the county planning commission. . . . If any party does not agree with the decision of the county planning commission, he may appeal to the county commissioner. A decision by the county commissioner shall be the final administrative appeal . . . ."), 38-15 ("The county commissioner shall have the power to adopt and amend this [Land Development Standards] chapter after the public hearing required by section 38-14 is held.").

[4] The trial court and the Court of Appeals referred to this letter as the "August 11 Letter," which was the date typed on the letter. We note, however, that the County Clerk explained that she typed the letter on Friday, August 11, and Jones signed the letter either that day or the following Monday, August 14, but it was on August 14 that she made a copy of the letter, mailed the original, indicated the date of mailing in the top right-hand corner of the copy, and placed the copy in the commissioner's files. Given the two-year delay before MAC filed its lawsuit, whether the letter is attributed to August 11 or 14 is immaterial, and we refer to it simply as the "August 2006 Letter."

Shortly thereafter, MAC submitted a new preliminary plat to develop its property as a 39-lot subdivision called "Hampton Farms," with septic tanks and three- to five-acre lots, and MAC later submitted an application to rezone the property to accommodate the new proposal. On October 10, 2006, at a public meeting, Commissioner Jones approved the rezoning, and the Hampton Farms project went forward. That project apparently was unsuccessful, as the real estate market entered a steep decline.

Almost two years after the August 2006 Letter, on August 6, 2008, MAC filed a complaint for inverse condemnation against Pickens County, Jones, Pope, and Buckingham (collectively, the "County") and for punitive damages against Jones, Pope, and Buckingham.[5] The complaint alleged that the August 2006 Letter "constitutes a final decision by Pickens County officials to apply the current zoning and development procedures" to MAC's property and this decision forced MAC to abandon the Silverstone proposal as economically unfeasible.

On June 18, 2010, the County filed a motion for summary judgment on the ground that the complaint was untimely under OCGA § 5-3-20. On February 14, 2011, the trial court granted the County's motion, ruling that the August 2006 Letter was a "decision" because it stated the County's "position" that any development of the property must comply with the current County Code; that the decision was entered by filing as required by OCGA § 5-3-20 because the letter was maintained as an official record in the commission office; and that MAC's failure to file its complaint within 30 days of the letter barred its claim for inverse condemnation based on that decision. The trial court also ruled that MAC's punitive damages claim was moot in light of the grant of summary judgment to the County on the underlying condemnation claim.

After the Court of Appeals affirmed those rulings, see *Mortgage Alliance Corp.*, 316 Ga. App. at 758, we granted certiorari.

2. OCGA § 5-3-20 establishes a jurisdictional deadline for "all appeals to the superior court, any other law to the contrary notwithstanding." OCGA § 5-3-20 (c). See *Fortson v. Tucker*, 307 Ga. App. 694, 696 (705 SE2d 895) (2011). All "[a]ppeals to the superior court shall be filed within 30 days of the date the judgment, order, or *decision* complained of was entered." OCGA § 5-3-20 (a) (emphasis

---

[5] The next day, MAC filed a parallel federal lawsuit under 42 USC § 1983. The district court dismissed MAC's federal takings claim without prejudice on the ground that it was not yet ripe given the pendency of this state case. See *Mortgage Alliance Corp. v. Pickens County*, No. 2:08-CV-0164-RWS, 2010 WL 1780072, at *8-9 (N.D. Ga. Apr. 30, 2010).

added). Final determinations by county authorities regarding the application of land use restrictions to a particular property constitute "decisions" within the meaning of OCGA § 5-3-20. See *Chadwick v. Gwinnett County*, 257 Ga. 59, 59 (354 SE2d 420) (1987) (county commission's denial of request for rezoning); *Taco Mac v. Atlanta Bd. of Zoning Adjustment*, 255 Ga. 538, 539 (340 SE2d 922) (1986) (city board of zoning adjustment's denial of variance application); *Hollberg v. Spalding County*, 281 Ga. App. 768, 771 & n.13 (637 SE2d 163) (2006) (county commission's grant of request for rezoning). The 30-day deadline applies even if the challenge to the county's land use decision is couched in terms of inverse condemnation. See *Mayor & Alderman of City of Savannah v. Savannah Cigarette & Amusement Svcs., Inc.*, 267 Ga. 173, 174 (476 SE2d 581) (1996).

As noted above, MAC alleged in its complaint that the August 2006 Letter constituted a "final decision" by the County not to grandfather the Silverstone project and instead to evaluate MAC's proposal under the zoning and development procedures as amended on August 8, 2006. In opposing summary judgment and on appeal, MAC has contended that the letter did *not* constitute a final decision by the County with respect to the application of the 2006 Code Amendment to the Silverstone project. Contrary to the view of the trial court and the Court of Appeals, see *Mortgage Alliance Corp.*, 316 Ga. App. at 756-757, however, MAC's subjective understanding of the letter does not control the legal determination of whether the letter qualified as a "decision" under OCGA § 5-3-20.

The trial court looked to the definition of "decision" in Black's Law Dictionary, which is "[a] judicial or agency determination after consideration of the facts and the law; esp., a ruling, order, or judgment pronounced by a court when considering or disposing of a case." However, at the time Commissioner Jones sent the August 2006 Letter, there was no "case" before him to be disposed of, because MAC had not appealed Buckingham's February 2005 denial of the preliminary plat for Silverstone to Jones under § 38-10 of the County Code. See footnote 3 above. Moreover, the letter simply notified MAC of the County's "position" that any proposal to develop the property would have to comply with the current County Code. The letter did not purport to be a final "decision" on the Silverstone proposal — which had previously been denied at the land development officer level for reasons unrelated to its proposed sewer system — or any other specific land use proposal. In short, the letter may have been a strong indication of how the County would ultimately decide a proposal by MAC to develop its property with lot sizes under an acre

and private sewers or septic tanks, but the letter had no operative effect.

If MAC wanted a final decision from the County on its Silverstone proposal, it should have filed a new preliminary plat addressing the problems indicated on its previous submittals and, if approval was again denied by the land development officer, filed an administrative appeal to the commissioner as provided for in County Code § 38-10. Alternatively, MAC could have filed an application for a variance with the county development office, which the commissioner then would grant or deny, see County Code §§ 38-12, 38-326, or filed an application for rezoning for consideration by the commissioner, see County Code § 38-15. If the commissioner actually denied the proposal or such an application, that would be a final decision that could be appealed to the superior court. See *Savannah Cigarette*, 267 Ga. at 173-174; *Dept. of Transp. v. Poole*, 179 Ga. App. 638, 640 (347 SE2d 625) (1986). But MAC did none of these things; it appears to have felt which way the wind was blowing and turned in that direction, submitting its new plan for Hampton Farms rather than pressing forward to obtain a final decision on its Silverstone project. As a result, there was no "decision" on Silverstone for MAC to appeal under OCGA § 5-3-20.[6]

Had MAC done any of those things, there likely would be no meaningful dispute about whether and when the "decision" was "entered" and "filed" under OCGA § 5-3-20, because as discussed below, Georgia's Open Meetings Act, OCGA §§ 50-14-1 to 50-14-6, would have required Commissioner Jones to decide the issue in an open meeting, with the decision written and filed in the official minutes of the meeting, if nowhere else. See OCGA § 50-14-1 (e) (2) (B); *Chadwick*, 257 Ga. at 59-60 (holding that the time to appeal under OCGA § 5-3-20 began to run when the chair of the county commission executed the minutes of the public meeting where the commission denied the rezoning request). Compare *Taco Mac*, 255

---

[6] The Court of Appeals repeatedly referred to the August 2006 Letter as a "zoning decision," but the letter clearly was not a "zoning decision" as that term is defined in Georgia's Zoning Procedures Law ("ZPL"), OCGA §§ 36-66-1 to 36-66-6. The ZPL defines a "[z]oning decision" as:

> final legislative action by a local government which results in: (A) The adoption of a zoning ordinance; (B) The adoption of an amendment to a zoning ordinance which changes the text of the zoning ordinance; (C) The adoption of an amendment to a zoning ordinance which rezones property from one zoning classification to another; (D) The adoption of an amendment to a zoning ordinance by a municipal local government which zones property to be annexed into the municipality; or (E) The grant of a permit relating to a special use of property.

OCGA § 36-66-3 (4) (A)-(E). The letter did not purport to adopt or amend a zoning ordinance or to grant a special use permit.

Ga. at 538-539 (addressing the date of "entry" of a decision under OCGA § 5-3-20 (b) where the board of zoning adjustment held a public meeting at which it orally denied Taco Mac's variance application and later sent Taco Mac a letter notifying Taco Mac of the decision). Because MAC did not seek and obtain a final decision on its Silverstone project as the law requires for an appeal to the superior court, whether the April 2006 Letter was properly "entered" and "filed" did not need to be addressed — and the Court of Appeals' discussion of that issue, see *Mortgage Alliance Corp.*, 316 Ga. App. at 757-758, should be viewed as dicta only.

Our conclusion that the August 2006 Letter was not a "decision" under OCGA § 5-3-20 is informed by the requirements of the Open Meetings Act, which applies to county commissions including Pickens County's one-person commission. See OCGA § 50-14-1 (a) (1) (B). The law requires the commission to hold meetings that are open to the public whenever any "official business, policy, or public matter" of the county is "formulated, presented, discussed, or voted upon," OCGA § 50-14-1 (a) (3) (A) (i), subject to exceptions not applicable here. The Open Meetings Act further provides that "[a] summary of the subjects acted on . . . shall be written and made available to the public for inspection within two business days of the adjournment of a meeting," OCGA § 50-14-1 (e) (2) (A), and that "[t]he regular minutes of a meeting subject to this chapter shall be promptly recorded and such records shall be open to public inspection once approved as official by the agency or its committee, but in no case later than immediately following its next regular meeting," OCGA § 50-14-1 (e) (2) (B). The minutes must at least include "the names of the members present at the meeting, a description of each motion or other proposal made, the identity of the persons making and seconding the motion or other proposal, and a record of all votes." Id. Moreover, "[a]ny resolution, rule, regulation, ordinance, or other official action of an agency adopted, taken, or made at a meeting which is not open to the public as required by this chapter shall not be binding." OCGA § 50-14-1 (b) (2).[7]

The record shows that Commissioner Jones conducted public meetings at which zoning and land use issues were decided, with those decisions incorporated into the official minutes, during the time period surrounding the August 2006 Letter — including with regard

---

[7] See also OCGA § 50-14-1 (b) (2) (requiring lawsuits contesting the formal action of an agency based on an alleged violation of OCGA § 50-14-1 to be commenced no later than 90 days or six months after the contested action, depending on the circumstances), (b) (3) (requiring "any action under this chapter contesting a zoning decision of a local governing authority [to] be commenced within the time allowed by law for appeal of such zoning decision.").

to MAC's Hampton Farms rezoning request. This compliance with Open Meetings Act requirements weighs against treating a "position" expressed in a letter that was not discussed or adopted in a public meeting and is not reflected in the official minutes as a final decision of the County on MAC's Silverstone proposal.

Our conclusion is also informed by the law requiring exhaustion of administrative remedies before a cause of action for inverse condemnation ripens for judicial review. Indeed, this case is similar to our recent case of *City of Suwanee v. Settles Bridge Farm, LLC*, 292 Ga. 434 (738 SE2d 597) (2013). Settles Bridge had assembled about 36 acres of property in a section of Suwanee zoned residential, which permitted schools as of right. See id. at 435. Notre Dame Academy contacted Settles Bridge about purchasing the property to develop as a school, and after confirming with a city planning official that schools were a permitted use in the property's zoning district, Settles Bridge agreed to sell the property to Notre Dame. See id. Shortly thereafter, however, city officials learned of the project, which was inconsistent with the use of property in that section of the city contemplated by the city's 2030 Comprehensive Land Use Plan, which the city was then in the process of developing. The city council adopted a three-month moratorium on the issuance of building and development permits within residential zoning districts for "large projects" such as the school envisioned by Notre Dame and then amended the city's zoning ordinance to require a special use permit ("SUP") for large development projects within residential zones. See id.

Neither Settles Bridge nor Notre Dame applied for a special use permit for any proposed use of the property. See *Settles Bridge*, at 436. Instead, they filed suit against the city, challenging the legality of the moratorium and the SUP amendment, although Notre Dame later settled and terminated its purchase contract with Settles Bridge. See id. At the conclusion of a bench trial on Settles Bridge's inverse condemnation claim against the city, the trial court found that the SUP amendment effected a regulatory taking of Settles Bridge's property and awarded more than $1.8 million in damages. See id. at 434.

This Court reversed, holding that Settles Bridge's inverse con- demnation claim was "unripe for judicial review." *Settles Bridge*, at 437. We reiterated the general rule that "a party must first apply to local authorities for relief" before seeking a judicial determination that the application of a local regulation to its property effected a regulatory taking requiring just compensation, id. — even if the party is "pessimistic about its prospects" based on "the conduct of an administrative decision-maker 'outside of and prior to the normal

administrative process,' " id. at 439 (citation omitted). Accordingly, we held that the trial court erred in declining to dismiss the case due to Settles Bridge's failure to exhaust its administrative remedies. See id. at 439.

Like the developer in *Settles Bridge*, MAC failed to obtain a final decision from the County regarding the application of the County's regulations to the Silverstone proposal before changing course and proposing the Hampton Farms project, which the County ultimately approved. Consequently, MAC's inverse condemnation claim against the County based on Silverstone never ripened for judicial review.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 4, 2013 —
RECONSIDERATION DENIED NOVEMBER 25, 2013.

*Roy E. Barnes, John R. Bevis, James C. Tribble*, for appellant.
*Landrum & Friduss, Phillip E. Friduss, Ellen L. Ash, Deborah V. Haughton*, for appellees.