**FOURTH DIVISION
DOYLE, P. J.,
MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 21, 2014**

# In the Court of Appeals of Georgia

A13A2254. NOBLE PARKING, INC. v. CENTERGY ONE
ASSOCIATES, LLC et al.

BOGGS, Judge.

Noble Parking, Inc. ("Noble") appeals from the trial court's grant of summary

judgment in favor of the City of Atlanta, and its grant of partial summary judgment

in favor of Centergy One Associates, LLC, and Tuff Parking. The court ruled that as

matter of law, Noble's legal nonconforming ("grandfathered") use of its property was

superseded by a permitted use, and that in any event, Noble's claim to the contrary

was barred by its failure to exhaust administrative remedies. Because the trial court

erred in both respects, we reverse.

"In reviewing an order granting a motion for summary judgment, we view the

evidence in the record and make all reasonable inferences from it in the light most

favorable to the non-moving party and decide de novo whether the grant of summary judgment was appropriate." (Citations omitted.) *Mtg. Alliance Corp. v. Pickens County*, 294 Ga. 212, 213 (1) (751 SE2d 51) (2013). The record reveals that, beginning in June 2010, Noble operated a surface park-for-hire parking lot in Atlanta on property owned by Centergy North (not a party to this action and a separate entity from Centergy One Associates, LLC), and adjacent to property owned by Tuff. Centergy One Associates, LLC ("Centergy") owns property adjacent to a parking deck owned by Tuff and "master leases certain parking rights in the deck on the Tuff property."

In February 2011, the City determined that Noble's use of the property constituted a legal nonconforming use. Centergy appealed that decision, but it ultimately was affirmed by the City of Atlanta Board of Zoning Adjustment ("the BZA").

From November 2011 to January 2012, Cavalia USA, Inc., held its outdoor entertainment traveling horse show on the Noble parking lot.[1] The parties stipulated

[1] Several permits were issued to Cavalia not related to any zoning use requirements, including a "Special Events Permit" from the mayor's office, a building permit for the erection of tents and bleachers from the City, an alcohol beverage certificate from the City's department of finance, an outdoor cooking permit from the City's fire department, and a permit for temporary use of the street or sidewalk from

that during the Cavalia show, "no portion of the subject properties was utilized as a surface park-for-hire lot." On February 9, 2012, one month following the end of the Cavalia show, the City, through its Office of Buildings, notified Noble that its park-for-hire surface parking lot had been superseded by a permitted use pursuant to the Code of Ordinances of the City of Atlanta ("City Code") §§ 16-24.005 (4), 16-18P.007 (1) (d), and 16-18P.007 (2) (b). Noble responded by informing the City that its decision was "without a legal basis" and that Noble intended to resume its park-for-hire business in March 2012. Although sections of chapter 16 of the City Code were cited in the City's letter to Noble, the City admits that it never issued Cavalia a permit "under any provision of Part 16" of the City Code.

On April 24, 2012, Centergy and Tuff filed a verified complaint and application for injunctive relief seeking to enjoin Noble from operating its park-for-hire business, and for damages. The City was allowed to intervene in the action, and filed its complaint on May 21, 2012, also seeking injunctive relief.

On January 30, 2013, Centergy and Tuff moved for summary judgment on only Count 1 of the complaint seeking injunctive relief. And on January 31, 2013, both Noble and the City filed cross-motions for summary judgment in their respective

the City's office of transportation.

favors. Following a hearing, the trial court granted summary judgment in favor of the City, ruling both that Noble's use was superseded by a permitted use and that Noble's "claim is barred for failure to exhaust administrative remedies." In a separate brief order, the trial court granted Centergy and Tuff's motion for partial summary judgment. The court ordered the grant of injunctive relief stayed during pendency of any appeal.

1. Noble first argues that the trial court erred in concluding that its "claim is barred for failure to exhaust administrative remedies." The appellees argue that because Noble failed to appeal the City's decision within 30 days as required by City Code § 16-30.010 (a), it is precluded from presenting a defense or "collaterally attacking" that decision. In support, the appellees cite to authority that holds "a litigant must first apply to the local authorities for relief by rezoning before seeking a declaration by a court of equity that a zoning ordinance is unconstitutional as applied to the litigant's property,"[2] *Powell v. City of Snellville*, 266 Ga. 315, 316 (467 SE2d 540) (1996), and that "a party dissatisfied with a zoning decision must appeal

---

[2] *Village Centers, Inc. v. DeKalb County*, 248 Ga. 177 (281 SE2d 522) (1981), cited by Centergy and Tuff, states this proposition more generally: "where the claim is merely that the enforcement or application of a particular classification to the plaintiff's property is unlawful and void, judicial relief is appropriate only after available administrative remedies have been exhausted." Id. at 179 (2) n.2.

to the superior court; it cannot circumvent the review process by instituting an untimely collateral attack on the zoning decision." (Citation and punctuation omitted.) *Mtg. Alliance Corp. v. Pickens County*, 316 Ga. App. 755, 757 (1) (730 SE2d 471) (2012), aff'd, *Mtg. Alliance Corp. v. Pickens County*, supra, 294 Ga. 212 (751 SE2d 51) (2013).

However, we find no authority, and the appellees have pointed to none, holding that a defendant is barred from *defending* an action brought initially by a third-party, because the defendant failed to exhaust its administrative remedies with the City. This action did not implicate the administrative process because it began as an action between two neighboring private parties, with one party seeking to enjoin the other's use of its property. While the City did later intervene in the action, Noble did not *seek* a "declaration in a court of equity," *Powell*, supra, nor did it "circumvent the review process" by *instituting* a collateral attack of the City's decision that its nonconforming use of the property had been superseded. *Mortgage Alliance Corp.*, supra, 316 Ga. App. at 757 (1). Compare, e.g., id. (plaintiff's inverse condemnation claim was collateral attack on earlier decision by County that proposed development must meet new zoning regulations). While an appeal to the BZA would be a condition precedent to Noble pursuing the matter further, Noble chose instead to inform the

City that it disagreed with the decision, and then resumed its parking business, thereby assuming the risk of the City pursuing a penalty for violation of the City Code. See City Code §§ 16-30.001 (enforcement) and 16-30.002 (penalties; "Any person . . . violating any provision of this part shall be deemed guilty of an offense and upon conviction therefore shall be punished as provided in . . the [City Code].").

This civil action, initiated by Centergy and Tuff, and later joined by the City, sought to enjoin Noble's use of its property, and Noble simply asserted a defense to that action. In the absence of some authority to the contrary, and in light of the particular procedural posture and circumstances of this case, we decline to hold that Noble was required to exhaust its remedies with the City in order to defend this action.[3]

2. Noble argues that the trial court erred in ruling that its parking business was superseded by a permitted use. "The construction of a zoning ordinance, under the facts, is a question of law for the courts, and in construing it the cardinal rule is to ascertain and give effect to the intention of the lawmaking body." (Citation and punctuation omitted.) *Northside Corp. v. City of Atlanta*, 275 Ga. App. 30, 31 (1)

---

[3]In light of our holding here, we do not address Noble's claim that the trial court's ruling results in a violation of due process because it forecloses Noble from asserting a defense.

(619 SE2d 691) (2005). And "[i]n construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry." (Citation and punctuation omitted.) *City of Atlanta v. Miller*, 256 Ga. App. 819, 820 (1) (569 SE2d 907) (2002). "Further, we must strictly construe the zoning ordinance in favor of the property owner, resolving ambiguities in the language in favor of the free use of property." *Trubey v. Hall*, 237 Ga. App. 498, 499-500 (1) (515 SE2d 639) (1999).

The City argues that City Code § 16-24-.005 controls here. That section provides in part:

> If lawful use involving individual structures . . . or of structures and premises in combination, exists at the effective date of adoption or amendment of this chapter that would not be allowed in the district under the terms of this chapter, the lawful use may be continued so long as it remains otherwise lawful, subject to the following provisions . . . (4) Any major structure, or major structure and land in combination, in or on which *a nonconforming use is superseded by a permitted use*, shall thereafter conform to the regulations for the districting in which it located; and the nonconforming use may not thereafter be resumed.

(Emphasis supplied.) "Permitted use" is not defined in the City Code, but the City argues that it simply means a use allowed and "not forbidden." The legislative intent of this section generally supports such a conclusion. City Code § 16-24.001 (1) provides: "It is the intent of this chapter to require removal or cessation of certain of these nonconformities, and to permit others to continue until they are otherwise removed or ceased." And subsection (2) states further that "[n]onconforming uses are declared by this chapter to be incompatible with permitted uses in the district." The City Code lists several "uses" that are "permitted" or allowed but do not require a special permit, and several Code sections distinguish between a "permitted" or allowed use, a use requiring a special permit or a special administrative permit, and a use that is "not permitted" or not allowed. See, e.g., City Code §§ 16-18A.006, 16-18L.006 (2), 16-18O.005, 16-18P.005 In keeping with the literal meaning of this section and construing all parts of the ordinance together, "permitted use" here is a use generally allowed or authorized by the City Code. See *Trubey*, supra, 237 Ga. App. at 499 (1) ("In order to ascertain and effectuate the lawmaking body's intent, we look to all parts of the ordinance and construe them together, harmonizing wherever possible.").

8

In this case, however, the City asserted that Cavalia's permitted or authorized use was a use pursuant to City Code §§ 16-18P.007 (1) (d) and 16-18P.007 (2) (b). The first paragraph of City Code § 16-18P.007 provides: "The following uses are *permissible only by* additional special permits of the type indicated subject to limitations and requirements set forth in this chapter 18P . . . and subject to the applicable procedures and requirements set forth in section 16-25.001, et seq." (Emphasis supplied.). Subsection (1) (d) requires a special use permit for "outdoor amusement enterprises" for "90 days duration or longer," and subsection (2) (b) requires a special administrative permit for "outdoor amusement enterprises" lasting "less than 90 days."

The City concedes that it did not issue to Cavalia either a special use permit or a special administrative permit pursuant to City Code § 16-18P.007. But that Code section provides in plain, unambiguous, and positive language that "outdoor amusement enterprises" such as the Cavalia show are "*permissible only by* additional special permits" (emphasis supplied), which shall be processed by the Bureau of Planning.[4] See City Code § 16-25.001. Because Cavalia's use was a use that is only

---

[4]For this reason, we reject the City's contention that the various other permits issued by other departments show that Cavalia was a permitted use.

"permitted" or allowed by a special administrative permit pursuant to City Code § 16-18P.007 (2) (b),[5] and no such permit was issued, Cavalia's use could not act to supersede Noble's nonconforming use pursuant to City Code § 16-24-.005. See *Northside Corp. v. City of Atlanta*, 275 Ga. App. 30, 32 (2) (619 SE2d 691) (2005) (lower court erred in adopting interpretation of ordinance contrary to its plain language); see also, e.g., *JWIC, Inc. v. City of Sylvester*, 278 Ga. 416, 417-418 (603 SE2d 247) (2004) (city code of permitted uses specifies whether use is permitted as a matter of right or permitted by special exception permit); *Fulton County v. Bartenfield*, 257 Ga. 766, 767 (363 SE2d 555) (1988) (landfill is permitted use "pursuant to the issuance of a special-use permit").

"[S]tatutes or ordinances which restrict an owner's right to freely use his property for any lawful purpose are in derogation of the common law; therefore, they must be strictly construed and never extended beyond their plain and explicit terms." (Citation and punctuation omitted.) *Beugnot v. Coweta County Board of Zoning Appeals*, 231 Ga. App. 715, 722 (1) (b) (500 SE2d 28) (1998). We therefore decline

---

[5]Subsection (2) (b) of City Code § 16-18P.007 applies here rather than subsection (1) (d), as the record reveals that the Cavalia show was held for less than 90 days.

to hold that a vested right in a legal nonconforming use can be superseded by a use that takes place outside of the express terms required for that use.[6]

For these reasons, we reverse the trial court's grant of summary judgment in favor of the City and its grant of partial summary judgment in favor of Centergy and Tuff.

*Judgment reversed. Doyle, P. J., and McFadden, J., concur.*

---

[6]We recognize the potential for abuse where, to maintain a legal nonconforming use, a permit is not obtained because of collusion. But the record reveals no evidence of such collusion here.