297 Ga. 429
FINAL COPY

S15A0489. ELBERT COUNTY et al. v. SWEET CITY LANDFILL, LLC et al.

HINES, Presiding Justice.

This Court granted the application for discretionary appeal of Elbert County, its Board of Commissioners, and the County Manager (collectively, "the County") from an order of the Superior Court of Elbert County that, inter alia, granted a declaratory judgment to the effect that the Elbert County Solid Waste Disposal Ordinance was unconstitutional, denied the County's motion to dismiss, and issued a writ of mandamus requiring the County to reasonably consider the site proposed by Sweet City Landfill, LLC and its members (collectively, "Sweet City") for a solid waste landfill. For the reasons that follow, we reverse and remand for further proceedings.

On November 2, 2009, Sweet City filed with the County a document styled "Application and Agreed Minimum Operating Conditions"; this document requested that "a Special Use Permit and a zoning estoppel letter and a certificate of solid waste plan consistency be simultaneously issued . . . in

accordance with Section 62-52 of the Elbert County Code of Ordinances [and relevant sections of the Georgia Comprehensive Solid Waste Management Act, OCGA § 12-8-20 et seq., and regulations of the Department of Natural Resources]." At the time of Sweet City's application, Elbert County ordinances required a Special Use Permit ("SUP") be issued for operation of a solid waste landfill. However, also at the time of the application, the County was in the process of amending its ordinances pertaining to waste disposal landfills, having already given a proposed amendment a "first reading"; the effect of this 2009 amendment was to exempt a "waste to energy" solid waste facility, as defined by OCGA § 12-8-22 (41),[1] from the requirement that a landfill SUP be obtained. Sweet City then sought to amend its application to qualify, in its view, as a "waste to energy" project and thus be exempted from the requirement to secure a SUP.

Without formal action on Sweet City's proposal, the County decided to go forward with a proposal for a waste disposal facility operated by Plant

[1] OCGA § 12-8-22 (41) defines terms used in the Georgia Comprehensive Solid Waste Management Act and reads:

"Waste to energy facility" means a solid waste handling facility that provides for the extraction and utilization of energy from municipal solid waste through a process of combustion.

2

Granite, LLC, which in the County's view would be a "waste to energy" facility.[2] Sweet City twice filed suit in connection with this decision, and on October 14, 2011, Sweet City and the County entered into a "tolling agreement" which put in abeyance the legal disputes between the County and Sweet City while they sought common ground on Sweet City's application for a SUP. On September 11, 2011, the County again amended its solid waste management ordinance to require that all solid waste facilities, including those that qualified as a "waste to energy" facility, would require a SUP.

On June 29, 2012, Sweet City requested to be placed on the agenda of the July 9, 2012 meeting of the Elbert County Board of Commissioners ("Board") "for discussion and consideration [of] siting of a proposed solid waste facility and the associated proposed host agreement."[3] At that meeting, the Board voted 5-0 "not to enter into a 'Host Agreement' with Sweet City Landfill, LLC, and, furthermore, to terminate the tolling agreement."

On March 13, 2013, Sweet City filed in the superior court a "Verified

---

[2] It is uncontroverted that this proposed facility was never built.

[3] The proposed host agreement was apparently intended to update matters in the SUP application as a result of discussions between the parties, such as the inclusion of an aesthetically pleasing entrance gate, additional pre-disturbance test wells, etc.

3

Complaint for Declaratory Judgment, and Injunctive Relief," requesting various relief, including declaratory judgments that the County's Solid Waste Ordinance was null and void as unconstitutional, and that Sweet City had a vested right to develop the subject property as a waste disposal facility; Sweet City also sought a mandatory injunction allowing it to proceed with the landfill. The County moved to dismiss Sweet City's complaint, and Sweet City moved for summary judgment. On September 11, 2014, the superior court issued an order: granting summary judgment to Sweet City on the grounds that the County's Solid Waste Ordinance violated the dormant Commerce Clause of the United States Constitution, and that the July 9, 2012 Board action deprived Sweet City of equal protection under both the United States and Georgia Constitutions; declaring that Sweet City has a vested right to have the County issue "a letter of zoning and development compliance and consistency with the County's solid Waste Management Plan"; declaring that Sweet City has a vested right to develop the property as a landfill free of any zoning and land use restrictions; and, granting a temporary injunction against the County from enacting or enforcing ordinances so as to interfere with Sweet City's development. The superior court also denied the County's motion to dismiss, rejecting the

4

County's argument that Sweet City had to exhaust its administrative remedies prior to filing suit.

1. The County contends that the trial court erred in granting Sweet City any relief, as the July 9, 2012 Board action was a final determination of Sweet City's application for a SUP and associated requests, and thus Sweet City was required to file a timely appeal pursuant to OCGA § 5-3-20[4] from the July 9, 2012 decision of the Board, and that the failure to do so foreclosed any review from that decision, even by a collateral attack such as a declaratory judgment. Sweet City, however, asserts that the Board did not address the SUP on July 9, 2012, but merely declined to enter into a "host agreement," and to end a tolling agreement, and that thus no appeal lay from the July 9, 2012 Board action.

The trial court found that the Board did not act upon Sweet City's application for a SUP. But, if the Board *did* render a final decision on Sweet City's application, and no appeal to the superior court was sought, the County's

---

[4] OCGA § 5-3-20 reads:
(a) Appeals to the superior court shall be filed within 30 days of the date the judgment, order, or decision complained of was entered.
(b) The date of entry of an order, judgment, or other decision shall be the date upon which it was filed in the court, agency, or other tribunal rendering same, duly signed by the judge or other official thereof.
(c) This Code section shall apply to all appeals to the superior court, any other law to the contrary notwithstanding.

5

basis for the motion to dismiss would be well founded.

> OCGA § 5-3-20 establishes a jurisdictional deadline for "all appeals to the superior court, any other law to the contrary notwithstanding." OCGA § 5-3-20 (c). [Cit.] All "[a]ppeals to the superior court shall be filed within 30 days of the date the judgment, order, or *decision* complained of was entered." OCGA § 5-3-20 (a) . . . . Final determinations by county authorities regarding the application of land use restrictions to a particular property constitute "decisions" within the meaning of OCGA § 5-3-20. [Cits.] The 30–day deadline applies even if the challenge to the county's land use decision is couched in terms of inverse condemnation. [Cit.]

*Mortgage Alliance Corp. v. Pickens County*, 294 Ga. 212, 215-216 (2) (751 SE2d 51) (2013) (emphasis in original). See also *Chadwick v. Gwinnett County*, 257 Ga. 59 (354 SE2d 420) (1987).

However, the agenda of the Board meeting shows simply that the Board would address a "Request from Sweet City Landfill, LLC for discussion and consideration of a proposed host agreement associated with a solid waste facility." And, there was no single document that had been prepared so as to comprise a proposed "host agreement." Rather, documents in the record suggest that what was before the Board at the July 9, 2012 meeting was essentially a framework of how a host agreement *would* be prepared, with general statements as to what it might contain. Further, even this framework did not refer to a SUP.

6

The Board's minutes show only that a motion was made and carried for the Board "not to enter into a 'Host Agreement' with Sweet City Landfill, LLC, and, furthermore, to terminate the tolling agreement." The minutes do not show any other action taken at the July 9, 2012 meeting in regards to Sweet City, and the trial court did not err in ruling that the Board took no action on Sweet City's application for a SUP. See *Mortgage Alliance*, supra at 219.

Nonetheless, the trial court erred in addressing the County's motion to dismiss, finding that, under OCGA § 12-8-26 (b), the July 9, 2012 Board action was a "siting decision," was done without the public notice required by OCGA § 12-8-26 (b) and Section 62-52 of the Elbert County Code of Ordinances, was "void ab initio and thus unappealable," and Sweet City thus had no obligation to appeal. This was error. Assuming that the July 9, 2012 Board action was void, it would not be unappealable; to the contrary, an appeal of a void judgment will result in a reversal and provide redress from an illegal judgment. See *Wetherington v. State*, 295 Ga. 172, 173 (758 SE2d 299) (2014); *Darden v. Ravan*, 232 Ga. 756, 758 (1) (208 SE2d 846) (1974).

The trial court also erred in rejecting the County's argument that, if the trial court decided that no final decision had been made by the Board regarding

Sweet City's application for a SUP, the court must dismiss the matter due to Sweet City's failure to exhaust its administrative remedies, allowing Sweet City to return to the Board to secure a final decision on its application for a SUP. See *Mortgage Alliance*, supra at 218-220. Rather, the trial court held that for Sweet City to return to the Board for a final decision would be a futile act, and therefore Sweet City fell into an exception to the exhaustion requirement. However, that exception does not apply.

As the County notes, the general rule is that before a party seeks redress in the courts regarding the application of local regulation to property, it must apply to the local authorities for determination of matters such as the granting of a SUP, because "[r]equiring exhaustion of administrative remedies prevents unnecessary judicial intervention into local affairs and promotes judicial economy because local authorities, unlike the court, have the power to grant the . . . relief sought." *City of Suwanee v. Settles Bridge Farm, LLC*, 292 Ga. 434, 437 (738 SE2d 597) (2013) (Citations and punctuation omitted.) "However, this Court has recognized a narrow exception to the exhaustion requirement for situations in which the litigant establishes that submitting to the administrative process would be 'futile.' [Cits.]" Id. Under that exception, "futility will be

found to exist only where further administrative review would result in a decision on the same issue by the same body." Id. (Citations and punctuation omitted.) But, "the first step in establishing futility is to show that the administrative decision-maker to whom the litigant would be required to go to seek relief has already rendered a decision on the issue." Id. And Sweet City cannot meet that step; as the trial court found, the Board did not render a decision on Sweet City's SUP application. While Sweet City contends that the decision of the Board can be predicted from the prior dealings between the County and Sweet City, this Court has noted that a party must seek the appropriate relief from the local authorities even if the party is pessimistic about its prospects. *Mortgage Alliance*, supra at 219 (2).

As noted, the trial court ruled that Sweet City had a vested right to have the County issue "a letter of zoning and development compliance and consistency with the County's Solid Waste Management Plan." However, Sweet City's failure to obtain a final decision from the Board and afford it the opportunity to address its claim of a vested right to a SUP made it impossible for the superior court "to determine whether [Sweet City's] vested rights have been violated, since . . . the appropriate County authority [n]ever denied [it] any

9

such permit." *Cooper v. Unified Govt. of Athens-Clarke County*, 277 Ga. 360, 361 (589 SE2d 105) (2003). "This Court's long-standing procedure is to address these vested rights claims only after the local zoning authority has refused to issue the necessary permits for the proposed project, or has imposed unconstitutional restrictions on an existing project. [Cits.]" Id. Accordingly, the trial court erred in reaching the merits of Sweet City's claim to have a vested right in the issuance of a letter of compliance. Similarly, the trial court erred in addressing Sweet City's equal protection claim, in which it contended that it had been treated differently from allegedly similarly situated Plant Granite.[5] See *Catoosa County v. R.N. Talley Properties*, 282 Ga. 373, 375 (651 SE2d 7) (2007).

2. The trial court also granted summary judgment to Sweet City as to its facial challenge to the constitutionality of the County's solid waste ordinance under the "dormant" aspect of the Commerce Clause of the Constitution of the United States. See U.S. Const. Art. I, Sec. 8, Cl. 3. And, as the court noted,

---

[5] Accordingly, we need not address the County's enumeration of error regarding certain evidentiary rulings the trial court made in connection with its grant of summary judgment to Sweet City on the equal protection claim.

there is no exhaustion requirement when an ordinance is challenged on its face. *King v. City of Bainbridge*, 272 Ga. 427 (2) (531 SE2d 350) (2000).

The County's solid waste ordinance requires that in addition to obtaining a SUP, all private solid waste facilities must, among other criteria, be located on a State Highway, not create traffic through residential areas, be more than three miles from "state waters" as defined in OCGA § 12-7-3 (14), be more than three miles from certain cultural and governmental sites, and be more than one mile from any residence or water supply well. There was uncontroverted evidence that, when all criteria set forth in the ordinance were applied, there was no location in Elbert County upon which a solid waste facility could be located, and that there was currently no solid waste facility in Elbert County. These criteria, and the requirement that a SUP be obtained, apply to all applicants for a private solid waste facility, regardless of whether the applicant is a resident of Elbert County, another county in Georgia, or a jurisdiction outside of Georgia.

The United States Supreme Court has "long interpreted the Commerce Clause as an implicit restraint on state authority . . . . [Cits.]" *United Haulers Assn. Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U. S. 330, 338 (II) (A) (127 SCt 1786, 167 LE2d 655) (2007).

11

To determine whether a law violates this so-called "dormant" aspect of the Commerce Clause, [courts] first ask whether it discriminates on its face against interstate commerce. In this context, "'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Discriminatory laws motivated by "simple economic protectionism" are subject to a "virtually *per se* rule of invalidity," which can only be overcome by a showing that the State has no other means to advance a legitimate local purpose.

Id. (Citations omitted.) And, if the law is not facially discriminatory, a court will engage in a balancing test as set forth in *Pike v. Bruce Church, Inc.*, 397 U. S. 137 (90 SCt 844, 25 LE2d 174) (1970). See *United Haulers*, supra at 346 (II) (D). Under *Pike*, when a statute or ordinance

regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities.

Supra at 142 (citation omitted).

As noted, the ordinance does not, on its face, discriminate against interstate commerce; all SUP applicants are subject to the same criteria, regardless of geographic origin, and it does not operate so as to protect the

12

interests of a county. Nonetheless, the trial court did not engage in the balancing test set forth in *Pike*, supra. Sweet City contends that such balancing was not necessary because (a) the ordinance was enacted not to effectuate a legitimate public purpose, but solely to accomplish the goal of banning private solid waste facilities from Elbert County; and (b) the effect of the ordinance on interstate commerce is not merely incidental. The trial court accepted these arguments in granting Sweet City summary judgment, but erred in doing so.

Although the trial court's order recites that the "stated legislative intent of the Elbert County Solid Waste Ordinance as of 2009 and present is to ban all municipal solid waste landfills in Elbert County," this ignores the record before the trial court. The 2006 enactment of the solid waste ordinance, referred to in the applicable amendments, states that, inter alia, the ordinance is to promote the safety and welfare of the County residents, preserve County resources regarding County-maintained roads, and protect the natural resources of the County. Although Sweet City contends that there is other evidence showing that the purpose of the ordinance was not as stated, but was in fact, to exclude all solid

waste facilities from the County,[6] on the trial court's consideration of Sweet City's motion for summary judgment, this would only present an issue of material fact. See *Ansley v. Raczka-Long*, 293 Ga. 138, 140 (2) (744 SE2d 55) (2013).

Sweet City also argues that the effect of the ordinance on interstate commerce cannot be considered merely incidental in this instance because if all other counties in Georgia enacted similar ordinances, the cumulative effect would, in fact, significantly impact interstate commerce. But, this argument is simply speculative, and there is no evidence that the enactment of ordinances with the same siting criteria in the other 158 counties of Georgia would, in fact, produce an effective ban on the location of solid waste facilities. Of course, other counties could impose siting criteria that, when applied to their own situations, create an effective ban on the siting of solid waste facilities within their borders, but that actually shows the wisdom of requiring the trial court to apply the *Pike* test, evaluate the degree of "burden that will be tolerated . . .

---

[6] In support of this contention, Sweet City points to an appendix to its brief in this Court, rather than to the record from the court below. See Supreme Court Rule 19. Assuming that the evidence was before the trial court when it rendered its decision on Sweet City's motion for summary judgment, such would not alter the outcome of this appeal.

14

depend[ing] on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." *Pike*, supra. The trial court erred in declining to apply the *Pike* balancing test, and the case must be remanded for it to do so.

Judgment reversed and case remanded with direction. All the Justices concur.

Decided June 29, 2015.

County ordinance. Elbert Superior Court. Before Judge Boswell, Senior Judge.

Brinson Askew Berry Seigler Richardson & Davis, Ansel F. Beacham II, Norman S. Fletcher, Lee B. Carter; Jenkins & Bowen, Brandon L. Bowen, Robert L. Walker; Billy I. Daughtry, Jr., for appellants.

George E. Butler II; Smith, Welch, Webb & White, Andrew J. Welch III, Lajuana C. Ransaw, for appellees.